**UNITED STATES v. AUSMEIER et al.**

**No. 59.**

Circuit Court of Appeals, Second Circuit.

Nov. 21, 1945.

---

352

[4] These people were "anwaerters" or probationary members.

David S. Kumble, of New York City, for appellants.

T. Vincent Quinn, of Brooklyn, N. Y. (Robert M. Hitchcock and Leo A. Roth, both of Washington, D. C., of counsel), for appellee.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

■ 1. There was ample evidence to justify the jury in finding that each of the defendants made false statements in his application in answer to items Nos. 10 and 15. No. 10 required the applicant to tell what his "activities" had been or in what "activities" he intended to be engaged; in this connection he was called on to state his "membership or activities in clubs, organizations or societies." No. 15 required him to state what "organizations," engaged in whole or part in propaganda in the United States, he had "been affiliated with or active in." We think it clear that "activities", in both 10 and 15, meant the applicant's personal activities. In addition, in No. 10, "activities" explicitly included "membership"; in No. 15, "activities" explicitly included being "a member of" or a "worker for" such an organization. Each question thus required disclosure of membership in such an organization.

Of the defendants who were full members of the Party, some answered that they were aiding "no activities in the United States." The jury could reasonably find that such answers were untrue. Other full members said they were "non-resident" members. We think that the jury could reasonably have found such answers also false. For the phrase "non-resident" members might mean that such a person, although a Nazi, was a "non-resident" of Germany residing in this country and not a member of a party active here; and No. 15 was designed to call for disclosure of activities in the United States. The answers, to say the least, were misleading, for they created the impression that the defendant's connection with the Party was such that he had no "activity" here.

Other defendants were "anwaerters" who, in their answers, revealed nothing whatever as to their connection with the Party. The jury could have found their answers false. No. 10 called for an answer as to "activities"; No. 15 called for

---

5 The official application form.

356

"affiliation." The jury could reasonably have found that these defendants were "affiliated" with and "active" in the Party.

█ 2. But the making of such false statements was not enough to justify a verdict of guilt. Pursuant to 18 U.S.C.A. § 88, each of the defendants was charged with and convicted of conspiring to defraud the United States by the filing of statements in violation of the Alien Registration Act, 8 U.S.C.A. § 452 et seq. Section 457(c) of that Act imposes a penalty on an alien who "files an application for registration containing *statements known by him to be false* * * *."[6] As the substantive crime thus involved both (a) falsity and (b) knowledge of the falsity, the defendants were obviously entitled to have the judge charge, in the most unmistakable language, that no defendant here could be found guilty unless he was a party to an agreement, plan, or combination, to file an application containing statements known to him to be false.[7] The existence of a common undertaking, in which a defendant joined, merely to file statements which were false, but not known to him to be false, could not support his conviction.

█ Yet nowhere did the judge plainly so advise the jurors. He carefully read to the jurors 8 U.S.C.A. § 452(a) but he neither read nor mentioned to them § 457 (c) which, as above noted, defined the substantive crime as involving the filing by an alien of statements "known by him to be false." It is clear, we think, that the judge did not consider it necessary that each defendant should have "had in contemplation all the elements of the crime" he was "charged with conspiracy to commit."[8] Why he did not do so is, we think, made manifest by the following: Defendants requested a charge No. 34 reading, "If the evidence leaves you with a reasonable doubt whether any defendant believed the answers to questions * * * which he

or she was advised to make by the German Consul, fairly complied with the instructions contained in Government's Exhibit 235, you must resolve that doubt in favor of such defendant and find him or her not guilty." In response to this request, the trial judge said: "No 34 is denied since no defendant is charged with the substantive crime. The question is whether there was a conspiracy." This was the equivalent of saying that, where a substantive crime involves knowledge, a conspiracy to commit that crime need not. His comment, we think, shows that the trial judge entertained this notion: Knowledge by a defendant of the falsity of his statements was not necessary if that defendant confederated with another person, Draeger, who, unknown to that defendant, intended to, and did, bring about the filing by that defendant of an application containing statements known by Draeger to be false.

Such a notion is not uncommon. But we consider it erroneous. It might often result in the conviction of men not guilty of wrongdoing who innocently associated themselves with others intent on wrongdoing. The conspiracy doctrine is, at best, a dangerous instrumentality the use of which is fraught with dangers to the innocent.[9] If extended in accordance with the notion we have described, it would indeed be a menace to honest men. Cf. United States v. Peoni, 2 Cir., 100 F.2d 401, 403. As Judge Thomas said in Fulbright v. United States, 8 Cir., 91 F.2d 210, 211, where "knowledge * * * is made an essential element of the substantive crime * * * it must adhere in a charge of conspiracy to commit that crime." Escape from that doctrine cannot be had through the suggestion that the conspiracy here was "to defraud the United States," for here the conspiracy to defraud, if it existed, consisted of a conspiracy to have each defendant file statements known by him to be false.

[6] Emphasis added.

[7] Because of the defect in the instructions, we need not consider whether the evidence was sufficient to prove an alternative basis which would support conviction of any defendant, i.e., that he had knowledge of Draeger's intention to have other applicants file applications containing false statements known by such defendant to be false.

[8] See United States v. Mack, 2 Cir., 112 F.2d 290, 292. As to whether, at least in some circumstances, more is re-

quired, cf. Keegan v. United States, June 11, 1945, 325 U.S. 478, 65 S.Ct. 1203.

[9] For one thing, in practical effect it often permits the reception of what, in a non-conspiracy case, would be inadmissible hearsay evidence as to some of the defendants, and not infrequently evidence of that kind to an extent which would be considered improper in a non-conspiracy case even by most of those who, in general, favor the abolition of the hearsay rule.

357

█ Here, then, it was not enough that a defendant gave an answer which in fact was false, or one which was known to Draeger to be false; it was necessary for a conviction of any defendant to prove that he gave an answer which that defendant knew to be untruthful.[10] On the evidence, the jury, correctly instructed, could properly have concluded that each defendant had the requisite knowledge. But the judge's instructions were such that we fear the jurors may not have comprehended that they were called upon to decide that issue of fact. Had the instructions clearly apprised them that they must pass upon that issue, we think that, having in mind the authority-loving character of many modern Germans, and particularly of Nazis, the jurors could reasonably have believed that these defendants accepted as truthful the answers suggested to them by Draeger, a German official. We may dislike the Teutonic veneration of officialdom, but it is not criminal.[11]

We are not to be taken as saying that it was necessary for the judge to give an instruction worded precisely as was the requested Charge No. 34,[12] to which we refer primarily because his explanation of his refusal to give it illuminates his failure to instruct clearly as to the necessity of knowledge. We think that the failure so to instruct was so important that we would reverse even had no such request been made and no exception been taken to the charge.

It is suggested that the portion of the indictment read by the judge to the jury charged each defendant with the requisite knowledge. Whether that be true is not entirely clear.[13] But assuming arguendo (1) that knowledge by each of the appellants of the falsity of his statements was there charged and (2) that the reading of that part of the indictment to the jury would have been sufficient had the judge instructed the jurors that they should not render a verdict against a defendant unless they believed beyond a reasonable doubt that that defendant behaved as thus charged in the indictment, the fact is that here the judge gave no such instruction.

█ It is suggested that the necessity of knowledge was adequately stressed when the judge said (1) that a conspiracy involves "an understanding of a common purpose to be attained and the methods to be employed in bringing it about," and that each individual defendant was "entitled to have the evidence separately examined as to him or her," (2) that circumstantial evidence would be sufficient if "consistent only with knowledge of the common purpose and participation in that common purpose," and (3) that the jury should consider "whether there was present in the mind of any defendant knowledge of a common purpose and an effort to carry out that purpose." But these remarks were highly ambiguous. Without a sharper definition, they could well have led the jury to think the judge was referring merely to knowledge of a common purpose to file statements which in fact were false even if not known to a particular defendant to be false; and that such was the intention of the judge we think appears from his comment (discussed above) when he denied requested Charge No. 34. The government also makes much of the fact that defendants withdrew requested Charges No. 13, No. 14 and No. 15.[14] But the withdrawal

[10] The comment in footnote 7 applies here.

[11] On the evidence here, the judge, had he charged the necessity of knowledge of the falsity, might have added, in effect, that this requirement would be satisfied if the jury found that Draeger knew the statements were false, and, as to any defendant, that such defendant had impliedly agreed to accept Draeger's advice as a command which that defendant must obey without regard to whether or not the statements were false.

[12] Indeed, there was no adequate specific exception to the refusal to give this requested charge.

Although we do not rest our decision thereon, we note, in passing, that the judge denied requested Charge No. 17, and the defendants specifically excepted to that ruling.

[13] Even if it did not charge knowledge, the indictment was not defective on that account.

[14] They read as follows:

"13. You must acquit any defendant as to whom the Government fails to prove to your satisfaction and beyond the reasonable doubt that such defendant knew of the existence of the plan and the purpose of the conspiracy alleged to have been conceived by the German Ambassador, German Consul, and their aids.

"14. Even though you find that there was a conspiracy in which defendants acted, unless you find that they know-

of those requests was not an acquiescence in the error we have been discussing, for these requests dealt with knowledge of the existence of a conspiracy, not with knowledge of the falsity of the statements; they referred to knowledge of a combination to file statements which in fact were false but not to a combination to file statements known to individual defendants to be false.

The defect in the instructions was not cured when the judge gave the usual general charges as to presumption of innocence, burden of proof and reasonable doubt; in the absence of a specific charge as to knowledge of the falsity, such general charges were insufficient. Because there is altogether too much danger that the jury may not have understood that such knowledge was an essential element of guilt, we conclude that the verdict cannot stand.

Reversed and remanded.

ingly and wilfully participated therein, you must acquit them.

"15. You are charged that before you can decide what was the intent of any of the defendants you must first decide what knowledge he had, because if he had no knowledge of the existence of a conspiracy, if one existed, he could not have any intent to participate in it."

The following colloquy occurred with respect to No. 15:

"The Court: I think 15 is covered. I thing I said it must be the intentional and intelligent act of each defendant. I think I said that.

"Mr. Kumble: Yes.

"The Court: Is it withdrawn?

"Mr. Kumble: Yes, your Honor."