## UNITED STATES v. MAX et al.
### No. 8969.

Circuit Court of Appeals, Third Circuit. Argued Dec. 17, 1945.

Decided May 22, 1946.

Frederic M. P. Pearse, of Newark, N. J. (Max Mehler, of Newark, N. J., on the brief), for appellants.

Edgar H. Rossbach, of Newark, N. J., for appellee.

Before BIGGS, MARIS, and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The indictment in this case contains nine counts. The first count charges the defendants with unlawful possession of gasoline ration coupons. The second, third and fourth charge them with unlawfully transferring gasoline. The fifth to ninth inclusive charge possession of gasoline ration documents. The pertinent language of these last counts is generally the same. In count five it reads:

" * * * knowingly, wilfully and unlawfully use and transfer the said B ration

documents containing the said 383 likenesses of Class A-11 gasoline ration coupons the same having been theretofore counterfeited and forged in the manner following:

\* \* \* \* \* \*

" \* \* \* all in violation of General Ration Order 8 as issued by the Office of Price Administration, contrary to the form of the statute in such case made and provided and against the peace and dignity of the United States."

The defendants were convicted on all counts. Max, the individual defendant, was sentenced to one year on each of the first seven counts with the terms to run consecutively and to one year on each of the eighth and ninth counts with those terms to run concurrently with the sentence on the first count. The corporate defendant was fined $5,000 on each of the nine counts.

Appellants' first point questions the sufficiency of the last five counts of the indictment.[1] These counts are founded on Section 2.5 of General Ration Order 8 of the Office of Price Administration of March 25, 1943 as amended February 1, 1944 which reads:

"Sec. 2.5. Acquisition, use, transfer or possession of counterfeited or forged ration document. (a) No person shall acquire, use, permit the use of, transfer, possess or control any counterfeited or forged ration document under circumstances which would be in violation of section 2.6 if the document were genuine or if he knows or has reason to believe that it is counterfeited or forged."[2]

As seen the section is in two parts. The first prohibits the use of counterfeit ration documents in the same particulars as Section 2.6 prohibits the use of genuine ration documents.[3] The second part forbids the use of a counterfeit ration document if the possessor or user has knowledge that it is counterfeit or believes it to be such. Two distinct offenses are stated in the section. The indictment clearly indicates that its last five counts come under the second division of the section. No element of illegal possession or use under the referred to Section 2.6 is charged. The offense alleged is possession of counterfeit documents and "knowingly, wilfully and unlawfully" using and transferring them "the same having been theretofore counterfeited and forged in the following respects: \* \* \*" In other words, the knowledge attributed to the defendants is connected entirely with the use of and transfer of the sheets of coupons. There is nothing in any of the five counts alleging that the defendants knew the documents were counterfeit. It is that knowledge or belief which creates an offense under the second part of Section 2.5 and without it, no crime is charged. Care is taken in the indictment to point out the manner in which the documents were counterfeited but there is not a word that the defendants had knowledge of their falsity.

In United States v. Tobin, 7 Cir., 149 F.

---

[1] The errors in the indictment were never brought to the Court's attention. There was no motion as to them and no comment on them during the trial though there were general motions for a direction of verdict in favor of the defendants on the ground that the Government had failed to prove its case. The issue was tried apparently on the assumption that the indictment alleged knowledge by the defendants of the falsity of the ration documents. The defense request on this which was substantially included in the charge bears this out. Despite all this, the question being that of the failure of counts five to nine of the indictment to charge a crime, it is properly before us. Crank v. United States, 9 Cir., 61 F.2d 620; Benton v. United States, 4 Cir., 80

F.2d 162; United States v. Cook, 17 Wall. 168, 21 L.Ed. 538.

[2] The use of the "(a)" in Section 2.5 as amended seems inadvertent. The entire amended section is as above quoted.

[3] Section 2.6 as amended July 12, 1943 reads:

"Acquisition, use, transfer or possession of ration document. No person shall acquire, use, permit the use of, possess or control a ration document except the person, or the agent of the person, to whom such ration document was issued, or by whom it was acquired in accordance with a ration order or except as otherwise provided by a ration order. No person shall transfer a ration document except in accordance with the provisions of a ration order."

2d 534 relied upon by the Government to sustain the questioned counts, the first part of Section 2.5 was involved. The Court rightly held that under that branch of the section, knowledge that the documents were counterfeit was not a prerequisite to conviction. The knowledge attributed to the defendants in that case was that the coupons were unlawfully acquired and that they were transferred for a purpose not authorized by the regulations. These are violations described in Section 2.6. Such violations are directly covered by Section 2.6 if the ration documents are genuine and by the first part of Section 2.5 if they are counterfeit. No such crimes are described in counts five to nine. The Tobin decision shows the differentiation between the two divisions of Section 2.5 and as to the second part says, page 536 of 149 F.2d:

"The second situation provided for in Sec. 2.5 requires that the use or possession be with knowledge that the coupons are counterfeited or forged. It is not difficult to visualize that such forged coupons might be legally acquired in the ordinary course of business. Under such circumstances, it would be necessary to allege and prove that their use and possession by one who had thus lawfully acquired them was with knowledge that they were counterfeited or forged."

The Government argument proceeds on the theory that such knowledge was unnecessary and makes no claim that these counts charge it. But we are here dealing with the second part of 2.5 where knowledge of the falsity of the ration instruments is vital. The Trial Judge appreciated this for in his charge he instructed the jury that before the defendants can be "convicted concerning the forged coupons, it must be proven beyond a reasonable doubt not only that the coupons were counterfeit; but also that the defendant or someone responsible to the Power-Ol Refining Company at the time of the transaction had received or had coupons and believed these coupons were counterfeit." Crank v. United States, supra, presents a like situation both as to knowledge and wording of the indictment with the Court there saying at page 622 of 61 F.2d:

"The crime denounced by the statute is not merely that of receiving and concealing merchandise which had been theretofore unlawfully imported, but receiving and concealing the same knowing that it had been unlawfully imported.

"The indictment, in our opinion, is fatally defective in failing to charge one of the essential elements of the offense."

Appellants also urged that the Court erred in its charge by failing to inform the jury of the issues involved and of the essentials of the crimes for which the defendants were tried. The charge covered the necessary general elements with clarity and was meticulously fair. On its conclusion the Court asked the defense attorney, "Is there anything further you wish the jury to be instructed on * * *," and the answer was "No sir." No exception was taken and the only reference to the charge in the grounds of appeal was that the verdict was contrary to the charge of the Court. In the assignment of errors for the first time there appears complaint that the District Judge in his charge failed to define "the natural and essential elements of the crimes upon which the defendants were tried." Concerning the business of the defendants the Trial Judge said in his charge:

"You are to consider the circumstances of the business, the circumstances under which the business was transacted, the ordinary methods of business, and everything that comes to you and from the whole picture and not from parts of it you determine where the truth lies. Having determined where the truth lies you should render your verdict according thereto."

This and what the Court said on the forged document counts are the only allusions in the charge to the special facts of the matter. It is conceded that the indictment went to the jury.

In the situation as disclosed, the defense requests having been disposed of to the satisfaction of counsel, with no additions to the charge desired or exceptions taken and with the indictment going to the jury, the District Judge overlooked describing the offenses alleged in Counts one to

four of the indictment and the possible verdicts that could be returned. United States v. Levy, 3 Cir., 153 F.2d 995, 998 embraced quite similar facts. There, the indictment was in seven counts and arose out of violations of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq. The defendant was convicted under four of the counts. No seasonable request was made for pertinent instructions and the charge did not describe the offenses set out in the indictment. As to absence of requests by counsel, Judge Albert Lee Stephens for this Court held that " * * * even though no request is made, a reversal is justified if the failure to instruct constitutes a basic and highly prejudicial error. Williams v. United States, 1942, 76 U.S. App.D.C. 299, 131 F.2d 21." As to failure to tell the jury about the crimes charged he said:

"In the instant case the trial court's instructions to the jury did not contain the text of the applicable statute. They included no definite information as to the offense charged. Neither the provisions of the Price Control Act, the regulations, under it, nor the substance of either, ever reached the jury. The court and counsel of both parties were thoroughly acquainted with the law which the defendant was accused of violating, but there is nothing in the record showing that the jury was ever informed as to such prime requisite. The indictment itself states the offense charged by reference to the applicable law but does not set it out in full, and even if the indictment were found to contain a sufficient statement of the offense, the record does not show that its text was ever furnished the jury. The indictment or information is not always handed to the jury upon its retirement for consideration of the case, and the law does not require it. Therefore, we are not at liberty to assume that this was done.

"The case appears to have been tried to the jury upon the inadvertent assumption of both court and counsel that if the whiskey was sold above a certain price the sale would be illegal. But the basis for the illegality was never given the jury.

"It was error of the highest degree to submit the case to the jury without adequate instructions as to the law allegedly violated by the defendant on trial and impels the reversal of the judgment."

The last five counts of the indictment in this case are faulty. They do not set out the statutory crime called for by Section 2.5 and conflict with the Court's charge in that respect. The Court substantially covered the offenses intended by counts five to nine but the indictment itself does not. There is no description in the charge of the crimes alleged in the first four counts nor indeed any mention of them. As to all nine counts there was no instruction that the jury could find the defendants innocent of any or all of them.

Even if the indictment had been proper it would not have been sufficient for the District Judge to merely permit the jury to have it as he did in the instant matter. Nor would the situation have been cured by the Trial Court referring the jury to the indictment for a description of the offenses. The correct procedure is carefully pointed out in our recent decision in United States v. Noble, 155 F.2d 315, where we hold that it is necessary for the Court to charge orally the substance of the crime, first in order that the defendant may hear it and except thereto if he deems it advisable and second "to make as certain as may be that each member of the jury has actually received the instructions."

The judgment of the District Court is reversed and the case remanded with instructions that counts five to nine of the indictment be quashed and that a new trial be had on counts one to four inclusive.