## UNITED STATES v. PINCOURT et al.

### Nos. 9159, 9160.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 8, 1946.

Decided Jan. 30, 1947.

918

Frederic M. P. Pearse, of Newark, N. J. (Max Mehler, and Thorn Lord, both of Newark, N. J., on the brief), for Pincourt.

Charles A. Stanziale, Asst. U. S. Atty., of Newark, N. J. (Edgar H. Rossbach, U. S. Atty., and Samuel Cohen, Atty. in Charge Alcohol Tax Unit, both of Newark, N. J., on the brief), for the United States.

Before BIGGS and McLAUGHLIN, Circuit Judges, and RODNEY, District Judge.

McLAUGHLIN, Circuit Judge.

Appellant Pincourt and six other persons were indicted for conspiracy to sell distilled spirits above O.P.A. ceiling prices. Just prior to trial a severance was granted four of the defendants. The issue was tried as to Pincourt and the remaining two defendants, Sol Levy and Burt S. Good. At the close of the government's case, the District Judge announced he would direct a verdict of acquittal in favor of Good. As the defense was about to close, Levy changed his plea to guilty. The jury found Pincourt guilty. Both Pincourt and Levy appealed but the appeal on behalf of Levy has not been pressed.

The indictment charges that Pincourt and the six others (with Pincourt and Good acting personally and as partners under the name of the Royal Liquors Company) did wilfully conspire to sell and deliver certain distilled spirits "at prices that were to be in excess of maximum prices authorized by law and the provisions of Maximum Price Regulations 445, Article III, issued pursuant to the Emergency Price Control Act of 1942, as amended [50 U.S. C.A.Appendix, § 901 et seq.], the selling price insofar as known to your Grand Jurors to be $32.00 per case plus 50¢ for freight per case, an amount that would be in excess of the ceiling price of $18.34 per case, the exact amount to be charged in excess of such ceiling price other than as herein stated being to your Grand Jurors unknown, in violation of Section 4(a) of the Emergency Price Control Act of 1942, as amended."

The testimony for the government showed purchases of whiskey from Pincourt on December 3, 1943 and payment therefor at $32.50 per case. Delivery of the whiskey was not made until February 1944. The District Price Attorney, testifying for the government, said that on or about January 6, 1944, Amendment 9 to Regulation 445 for the first time fixed ceiling prices in so many words, by tables and appendices for a processor, in which group Pincourt concededly was. Using the tables to Amendment 9, the witness worked out what he said was the proper ceiling price of the whiskey to be $18.34 a case.

The primary question on this appeal is whether the jury was sufficiently instructed by the Court to enable it to perform its duty. The case took five days to try with the transcript running to 660 pages. The Judge in his instructions told the jury that the indictment charged that Pincourt with the other defendants conspired to commit certain offenses against the United States, "to wit, to sell and deliver distilled spirits at prices in excess of the maximum prices prescribed by the Maximum Price Regulations promulgated pursuant to the Emergency Price Control Act." This was the only reference in the charge to the price regulations. The Court then read and explained the pertinent language of Section 4(a) of the Price Control Act as defining the substantive offense. That section makes overceiling sales "unlawful" but does not render them criminally punishable. It is Section 205(b) of the Act which inflicts punishment for such sales when "willfully" made. Section 205(b) was not charged or otherwise alluded to by the Court.[1] Following the above part of his charge the

[1] The Court's entire language regarding the particular offenses involved was: "The indictment, as it now stands, charges that the defendant Pincourt knowingly and unlawfully agreed and conspired with the other defendants therein named to commit certain offenses against the United States, to wit, to sell

Court outlined the law of conspiracy in considerable detail and satisfactorily covered the other general principles arising in the trial.

The indictment against Pincourt was founded on his alleged violation of Regulation 445 as amended. The relevant portion of that regulation, namely, Amendment 9, was the primary law of the case. Instructions from the Court regarding it were necessary in order for the jury to intelligently apply it as part of the controlling law to the facts and so reach a verdict based upon a proper understanding of the issues. Such instructions became of more than ordinary importance because of the rather confusing trial circumstances indicated by the record. That confusion arose mainly because of the difficulty of establishing the ceiling price of the whiskey. This was eventually calculated by the Price Attorney in the course of his testimony. The Trial Judge did not discuss that evidence in his charge or instruct the jury how it should be considered, although the charge did contain the usual instruction concerning witnesses and the weight to be given their testimony.

Amendment 9 of Regulation 445 was not explained, read or mentioned by the District Judge in his charge. Without the governing regulation being made plain to it, the jury could not have an informed judgment on the issue and the case did not go to it under the safeguards of correct procedure. Cf. Williams v. United States, 79 U.S.App.D.C. 299, 131 F.2d 21, 22. The situation presented goes even further than the facts in the latest reported case in point, Morris v. United States, 9 Cir., 156 F.2d 525, where the neglect to define the offense in the Court's charge was held not cured by stating to the jury what essential facts if proven would constitute a violation of a specific price regulation.

Three recent decisions of this Court, all of them in much the same type of case as the one under consideration, clearly indicate that the failure of the Trial Court to charge the applicable regulation was substantial error. The first of those opinions, United States v. Levy, 3 Cir., 153 F.2d 995, concerned a liquor sale under the Price Control Act and its regulations. The District Judge did not charge either the statute or the regulations. As here, the defendant did not object. Despite this we deemed the error so fundamental that we reversed the judgment of the Court below, saying page 998: "In the instant case the trial court's instructions to the jury did not contain the text of the applicable statute. They included no definite information as to the offense charged. Neither the provisions of the Price Control Act, the regulations under it, nor the substance of either, ever reached the jury. The Court and counsel of both parties were thoroughly acquainted with the law which the defendant was accused of violating, but there is nothing in the record showing that the jury was ever informed as to such prime requisite. The indictment itself states the offense charged by reference to the applicable law but does not set it out in full, and even if the indictment were found to contain a sufficient

and deliver distilled spirits at prices in excess of the maximum prices prescribed by the Maximum Price Regulations promulgated pursuant to the Emergency Price Control Act.

"The pertinent provisions of the Emergency Price Control Act define the substantive offense, which is here the object of the alleged conspiracy, as follows: 'It shall be unlawful, regardless of any contract, agreement, * * *, or other obligation heretofore or hereafter entered into, for any person to sell or deliver any commodity, * * * in violation of any regulation or order' issued under the statute, 'or of any price schedule effective in accordance with the provisions of' the statute.

"You are instructed, however, that the indictment does not charge a violation of the Emergency Price Control Act but does charge a conspiracy to commit the offense therein prohibited as unlawful. The essence of the crime charged in the indictment is the unlawful agreement and not the substantive offense. The substantive offense, as here charged, is the unlawful object of the unlawful agreement. It is important that you bear the distinction in mind. Further instructions, I think, may clarify it for you. If it does not you may submit to the Court any question on it that you care to submit."

statement of the offense, the record does not show that its text was ever furnished the jury. * * * The case appears to have been tried to the jury upon the inadvertent assumption of both court and counsel that if the whiskey was sold above a certain price the sale would be illegal. *But the basis for the illegality was never given the jury.*" (Emphasis added.)

In the United States v. Noble, 3 Cir., 155 F.2d 315 the information charged the defendant with violation of the Second War Powers Act of 1942, 50 U.S.C.A.Appendix, § 631 et seq., and of general ration orders promulgated thereunder. The Court did not instruct the jury regarding the Act in question or the related ration orders allegedly violated. The information itself did go to the jury. In reversing the judgment we said at page 316: "We think it is self evident that a jury cannot perform its duty of determining the guilt or innocence of a defendant accused of a crime unless they know the essential elements of the crime which he is alleged to have committed. We think it equally self evident that the only appropriate scource of that knowledge is the trial judge, whose traditional function has always included that of instructing the jury upon the law."

Shortly after the Levy and Noble cases came United States v. Max, 3 Cir., 156 F.2d 13, in which the indictment inter alia was for unlawful possession of gasoline coupons and for unlawful transfer of gasoline. The Trial Court there did not describe the offenses in its charge although it did permit the jury to have the indictment. Our opinion squarely followed the Levy and Noble decisions (supra) in reversing the judgment of the lower Court.

█ Nor is the omission of the necessary legal guidance to the jury rendered harmless because appellant was tried for a conspiracy to commit the substantive offense which was insufficiently charged and not for committing the substantive crime itself. In either event, the substantive offense must be completely outlined. Since knowledge of the substantive offense is a vital element in the guilt of alleged conspirators (Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495; Ful-

bright v. United States, 8 Cir., 91 F.2d 210, 211; United States v. Ausmeier, 2 Cir., 152 F.2d 349, 356), the jury must be advised of what that knowledge consists. Certainly the direct mandate of the above cited series of decisions from this Circuit cannot be ignored because the instant indictment is for conspiracy and not a substantive crime.

█ We do not think that under facts before us the failure to refer to Section 205 (b) of the Price Control Act in charging Section 4 (a) of that statute, standing alone, would have been reversible error as is urged, but since the case must be remanded for a new trial we take this occasion to point out that the trend of the law strongly suggests that the reference should be made. Screws v. United States, supra, 325 U.S. 91 page 107, 65 S.Ct. 1031, 89 L.Ed. 1495; United States v. Ausmeier, supra; Fulbright v. United States, supra; United States v. Hutto (No. 1), 256 U.S. 524, 528, 41 S.Ct. 541, 65 L.Ed. 1073; Pettibone v. United States 148 U.S. 197, 203, 207, 13 S.Ct. 542, 37 L.Ed. 419.

█ It is also contended that the Trial Court erred in refusing to receive the testimony of one Vinci as to the reputation of the appellant. This witness, a business acquaintance of Pincourt, did say that he and Pincourt were "social friends" but he did not know either where Pincourt lived or any of the people in the community where Pincourt lived. We think the District Judge was correct in his ruling.

█ Finally it is asserted that the evidence of Miss La Vigna, a government rebuttal witness, was improperly admitted. It is claimed that this testimony was in contradiction of a collateral matter developed in cross examination of the defendant. Inspection of the record reveals that there was ample foundation for the testimony in Pincourt's direct examination; further, the record justifies the District Judge's characterization of the particular issue as "important."

█ We noted at the beginning of this opinion that an appeal had also been taken in this matter on behalf of the defendant Sol Levy. As to it, no briefs were filed and counsel advised us at the argument of no intent to proceed further. The reversal of

the District Court judgment is brought about by error arising from the Court's charge which occurred after Levy had changed his plea and did not affect him in any way. Cf. United States v. Fox, 3 Cir., 130 F.2d 56, 58, certiorari denied 317 U.S. 666, 63 S.Ct. 74, 87 L.Ed. 535.

The judgment as to appellant Pincourt is reversed and the case remanded to the District Court for a new trial. The appeal as to Sol Levy is dismissed for lack of prosecution.