**UNITED STATES of America**

**v.**

**Jules GORDON, Appellant.**

**No. 11972.**

United States Court of Appeals
Third Circuit.

Argued Dec. 18, 1956.

Decided March 1, 1957.

As Amended on Denial of Rehearing
April 1, 1957.

Jacob Kossman, Philadelphia, Pa., for appellant.

G. Clinton Fogwell, Jr., Philadelphia, Pa. (W. Wilson White, U. S. Atty., Louis C. Bechtle, Asst. U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before MARIS, GOODRICH and STALEY, Circuit Judges.

STALEY, Circuit Judge.

Appellant Jules Gordon was convicted of conspiracy to commit an offense against the United States, that is to attempt willfully "to evade and defeat a large part of the income taxes due and owing to the United States of America by Alfred W. McClure and Doris K. McClure for the year 1948, in violation of 26 U.S.C. § 145(b)." The conspiracy is in violation of Section 371 of Title 18 of the United States Code. Norman Tanz, an Internal Revenue agent, was tried on the same indictment but was acquitted. Clifford Harper, an accountant for the McClures, was named as co-conspirator but was not indicted. The convicted Jules Gordon, also an accountant, was sentenced to one year's imprisonment and fined $1,000. It is from this sentence and judgment that he appeals.

The following circumstantial evidence was produced by the government in its endeavor to prove a conspiracy to evade income tax among Norman Tanz, Clifford Harper, and appellant Gordon. Alfred W. McClure was the owner of an automobile agency in Troy, Pennsylvania. He and his wife filed their joint income tax return for 1948 showing an amount due of $1,315.70; this amount they paid. In April of 1950, Internal Revenue Agent Tanz visited McClure's place of business for an audit of books and records for 1947 and 1948. Tanz informed McClure that he owed the government a considerable amount of money in additional taxes. Later that same month, Tanz again went to McClure's agency and re-audited the books and accounts. McClure and Harper were both present when Tanz told them that $17,000 more was due as 1948 tax. Harper received

a letter from Tanz dated May 16, 1950, suggesting that Harper contact him without further delay in an effort to complete the McClure audit. The letter was typed on plain paper, not official stationery. Harper phoned Tanz and was informed that Tanz had recomputed the tax due from McClure as between $8,000 and $9,000, and that the amount would have to be paid in cash. Around May 23, 1950, McClure transmitted a check for $5,000 to Clifford Harper, payable to his order personally. Harper indorsed and negotiated the check, keeping the $5,000 in cash in his home.

On June 11, 1950, Harper visited Tanz at his home in Philadelphia and Tanz told Harper that he had a friend who could effect a quick settlement of the McClure tax matter for $8,000 or $9,000. Tanz's friend was appellant Jules Gordon, who drove to the place where Harper was staying in Philadelphia and introduced himself as "Mr. Jones." On June 21, 1950, Tanz filed his agent's report showing that the McClures owed only $492.80 in additional tax for 1948. A government tax expert, Tinsley, testified that he audited McClure's records and books and concluded that the tax due from the McClures in 1948 was $11,640.76.

In early July of 1950, appellant Gordon called Harper at the latter's home in Sayre, Pennsylvania, and at Gordon's suggestion they agreed to meet at a hotel in Wilkes-Barre. There appellant inquired of Harper whether he had any money with him to pay on the McClure tax account, adding that $8,000 or $9,000 would be needed to settle it. Harper told him that he had only $3,000 in cash, and although appellant was disappointed, he took the money and left. Later, Tanz told Harper that he knew of the $3,000 which Harper gave appellant.

Harper testified that in early September of 1950 he called Tanz to complain that a bill he received for the McClures' tax did not reflect the $3,000 which was already paid appellant. After Tanz got in touch with appellant concerning this matter, the latter phoned Harper and arranged a meeting with McClure and Harper at a hotel in Elmira, New York. Throughout all of the events up to this conversation, appellant Gordon used the assumed name of "Jones." At the end of the conversation, he informed Harper that his name was now "Smith."

At the hotel in Elmira, appellant said that he wanted to see McClure alone upstairs. There he told McClure that $4,500 was still due on his tax account. McClure refused flatly to pay, stating that he had already given Harper $5,000 and that an independent accounting firm had audited his books for 1948 and confirmed his belief that no further payments were due. Faced with this turn of events, appellant Gordon, at this point appearing to be in a hurry, handed McClure $2,500 in cash, saying that $500 was from him and $2000 was from Tanz. McClure called downstairs for his accountant Harper. When Harper came into the room, he returned to McClure $1,000 or $1,800, the amount being in dispute.

The appellant raises five material allegations of error which must be answered on this appeal: (1) Does the acquittal of Tanz require the acquittal of Gordon for want of capacity to commit the offense? (2) Was the evidence sufficient to sustain the conviction? (3) Did the instructions to the jury adequately define the elements of the offense charged? (4) Was it error to permit the government tax expert Tinsley to testify in view of the fact that all of the records of the McClure agency were not in evidence? (5) Was it error to read to Harper notes of his grand jury testimony without an instruction that such evidence is not substantive?

### The Effect of the Acquittal of Tanz.

One of the principal arguments of the appellant is that the acquittal of Tanz requires his acquittal also. This contention is predicated upon the erroneous belief that only Tanz had the capacity to commit the crime proscribed by Section 145(b) of Title 26; and since Tanz

was acquitted, only appellant and Harper were left to conspire. Neither he nor Harper, continues the argument, had the capacity to commit the offense, and therefore he must be acquitted.

■■■ The fallacy of this reasoning is rooted in the appellant's misconception of the nature of the crime which was the object of the conspiracy. The offense described by Section 145(b) of Title 26 is a willful attempt "in any manner to evade or defeat any tax." It is true that one manner of such attempt may be the willful filing of a false report with the taxing authorities. But to conclude that the willful filing of a false report or return is the only way "to evade or defeat any tax" is to give too narrow a construction to a statute which was intended to be more comprehensive. United States v. Johnson, 1943, 319 U.S. 503, 515, 63 S.Ct. 1233, 87 L.Ed. 1546. The filing of a false report or return is not even an essential element of the crime. United States v. Albanese, 2 Cir., 224 F.2d 879, 882, certiorari denied, 1955, 350 U.S. 845, 76 S.Ct. 87, 100 L.Ed. 753. And the fact that appellant performed many of the overt acts of the conspiracy after the date that Tanz filed his false report is irrelevant. United States v. Johnson, supra, 319 U.S. at page 515, 63 S.Ct. at page 1239. Of course, the fact that Harper and appellant are neither taxpayers nor revenue agents has no bearing upon their capacity to violate Section 145(b).

"* * * As the Supreme Court remarks, there is evidently no legislative purpose to exempt from punishment one who actively endeavors to defeat a tax, whatever his relationship to the taxpayer may be." Tinkoff v. United States, 7 Cir., 1936, 86 F.2d 868, 876, certiorari denied, 1937, 301 U.S. 689, 57 S.Ct. 795, 81 L.Ed. 1346.

It follows that appellant, Harper, and Tanz all had capacity to violate Section 145(b) of Title 26, and the jury might well have found a conspiracy from those events and conversations which occurred between Harper and appellant.

■■ There is nothing inconsistent in the acquittal of Tanz and the conviction of appellant Gordon. No one disputes that at least two members are necessary to form a conspiracy because this is specifically required by Section 371 of Title 18. One man cannot conspire alone. Where there are only two defendants indicted on a conspiracy charge and there is no evidence implicating anyone else, the acquittal of one requires the acquittal of the other. See United States v. Fox, 3 Cir., 130 F.2d 56, 57, certiorari denied, 1942, 317 U.S. 666, 63 S.Ct. 74, 87 L.Ed. 535; United States v. Masiello, 2 Cir., 235 F.2d 279, 280, certiorari denied sub nom. Stickel v. United States, 1956, 352 U.S. 882, 77 S. Ct. 100, 1 L.Ed.2d 79. However, if the indictment names even persons unknown as co-conspirators, and there is evidence to support the charge that one of the two defendants conspired with the unknown persons, that defendant's conviction may stand in spite of the fact that the other defendant was acquitted. See Rogers v. United States, 1951, 340 U.S. 367, 375, 71 S.Ct. 438, 95 L.Ed. 344; Pomerantz v. United States, 3 Cir., 1931, 51 F.2d 911, 913. If the conviction of one defendant may be sustained for conspiring with unknown persons, certainly it may be sustained where the evidence discloses a conspiracy between the defendant and a named co-conspirator, even if the latter is not indicted. Miller v. United States, 2 Cir., 24 F.2d 353, 361, certiorari denied, 1928, 276 U.S. 638, 48 S.Ct. 421, 72 L.Ed. 745. Here the evidence tends to disclose a conspiracy between the convicted Gordon and the named but unindicted Harper.

### The Sufficiency of the Evidence to Sustain the Conviction.

■■ The second general contention of the appellant concerns the sufficiency of the evidence to sustain Gordon's conviction. It is our opinion that a mere recital of the facts of this case discloses

ample evidence to sustain the conviction. One point raised by appellant, however, does require discussion. On the witness stand Harper denied the existence of the conspiracy. Thus, contends appellant, direct evidence adduced from the government's witness denying the conspiracy so militates against the circumstantial evidence that the required standard of proof has not been met. This argument lacks merit. In prosecutions of federal criminal cases, the government is not bound by the testimony of its witnesses, and the jury may believe part of what a witness says and disbelieve the remainder. United States v. Palese, 3 Cir., 1943, 133 F.2d 600, 603. We would simply assume that the jury disbelieved Harper's denials but believed his testimony involving himself and appellant in the conspiracy. The argument is also made that circumstantial evidence should not be permitted to outweigh direct evidence. There is, however, nothing magical or sacrosanct about direct testimonial evidence as opposed to circumstantial evidence, especially when it comes from one who is implicated by the circumstances in the conspiracy he seeks to deny.[1]

### The Correctness and Adequacy of the Instructions.

■ The third major contention of the appellant is that the instructions were fatally defective in failing to define the offense charged. The record discloses that the appellant did not request any points for charge and did not object to any portion of the instructions

after they were delivered. In the absence of a request for charge, a reversal is justified only if the failure to instruct constitutes "a basic and highly prejudicial error." United States v. Levy, 3 Cir., 1946, 153 F.2d 995, 998. The issue here is thus narrowed to a question of whether such error existed in the charge.

■ If it were true that the instructions failed to define the offense charged, reversal would indeed be required. United States v. Levy, supra at page 998. The crucial question concerns just how much must be said about the substantive offense in a case charging only the conspiracy to commit that offense. The instruction in this particular case repeated the words of the indictment, and charged a conspiracy

> " * * * to commit an offense against the United States, that is to say to willfully attempt to evade and defeat a large part of the income taxes due and owing to the United States of America by Alfred W. McClure and Doris K. McClure for the year 1948, in violation of 26 U.S.C. Section 145(b), said conspiracy being in violation of 18 U.S.C. Section 371."

This instruction not only identifies the substantive offense as a violation of Section 145(b) but also describes it in proper statutory language as income tax evasion.[2] We must assume that the jury was one of average intelligence, and after sitting through five days of trial, knew very well what was

---

1. "Circumstantial evidence, is in the *abstract*, nearly, though perhaps not altogether, as strong as positive evidence; in the *concrete*, it may be infinitely stronger. A fact positively sworn to by a single eye-witness of blemished character, is not so satisfactorily proved, as is a fact which is the necessary consequence of a chain of other facts sworn to by many witnesses of undoubted credibility." Gibson, C. J., in Commonwealth v. Harman, 1846, 4 Pa. 269, 271–272. See also Holland v. United States, 1954, 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150.

2. The instructions in a prosecution for violation of Section 145(b) must, of course, describe the elements of tax evasion with more technical precision than is necessary for a charge of conspiracy to violate that section. But even in tax evasion prosecutions, where the indictment clearly charges the offense and the substance of the indictment is given to the jury, the instructions are not inadequate regardless of whether they fail to recite the statute or make any reference to it. Holland v. United States, 10 Cir., 209 F.2d 516, 522, affirmed, 1954, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150.

meant by the simple statutory words used to describe the offense of tax evasion, and the instructions neither confused nor misled them. The appellant agrees that the instructions were adequate in charging the conspiracy. We are of the opinion that they were adequate also in outlining the substantive offense. The cases cited by appellant to support the proposition that it is highly prejudicial not to define the offense to the jury were correctly decided.[3] In those cases, the primary law involved was neither read nor explained to the jury. Here the primary law concerning conspiracy[4] was given the jury, and the substantive offense, since the statute is quite simple, was adequately defined.

### Tinsley's Testimony.

■ The fourth error alleged by appellant concerns the testimony of the government tax expert Tinsley, who was called upon to prove that the report filed by Tanz with the taxing authorities in 1950 was false. Appellant insists that since not all of the books and records were before the jury, Tinsley's testimony concerning them was error; United States v. Augustine, 3 Cir., 1951, 189 F.2d 587 is cited in support of that view. It is difficult to understand how this error, if indeed it be error,[5] could possibly affect appellant Gordon, since it was not necessary to prove the falseness of the Tanz report in order to sustain the conviction of Gordon on the charge of conspiracy. See United States v. Albanese, 2 Cir., 1955, 224 F.2d 879, 882. If it were error, only Tanz would have been prejudiced and, as we have seen, Tanz was acquitted.

### The Reading of Harper's Grand Jury Notes.

■ The fifth error alleged concerns the reading into the record of the grand jury notes which contained certain testimony of Harper slightly inconsistent with his testimony in this case. At the trial, Harper testified that Tanz told him that he "knew" of the $3,000 which Harper had given appellant at the hotel in Wilkes-Barre. The prosecution pleaded surprise and was permitted to read the grand jury notes which indicated that Harper had testified that Tanz told him that he had "got" the $3,000 which Harper gave Gordon. The total factual difference is practically inconsequential. The case against appellant Gordon is not affected one way or another by whether Tanz received, or merely knew about, the $3,000 which Harper gave appellant.

---

3. Among the cases cited were United States v. Pincourt, 3 Cir., 1947, 159 F.2d 917—primary law not explained, read, or mentioned to the jury; United States v. Max, 3 Cir., 1946, 156 F.2d 13, and United States v. Noble, 3 Cir., 1946, 155 F.2d 315—failure to charge the essential elements of the crime; United States v. Levy, 3 Cir., 1946, 153 F.2d 995—failure to define offenses charged in the indictment.

4. Appellant seems to lose sight of the fact that this case is a *conspiracy* conviction, not a conviction under § 145(b). Certainly not all of the elements necessary to convict under § 145(b) are needed to convict here. "A conspiracy is not the commission of the crime which it contemplates, and neither violates nor 'arises under' the statute whose violation is its object." Braverman v. United States, 1942, 317 U.S. 49, 54, 63 S.Ct. 99, 102, 87 L.Ed. 23.

5. United States v. Augustine, 3 Cir., 1951, 189 F.2d 587, which was a prosecution not for conspiracy but for actual violation of § 145(b), stated by dictum that it was improper for a witness to testify from records which were not in evidence. However, in the case under consideration, a summary of the pertinent books and records was before the jury in the form of a supplemental year-end statement prepared by McClure for the Ford Motor Co. McClure's original 1948 tax return was also in evidence. And even if the rule applicable to a conspiracy to violate the tax-evasion section were as stringent as the rule in a prosecution for actual violation of that section, it would seem that the holding of the Augustine case would be substantially satisfied. United States v. Augustine, 189 F.2d at page 589.

**128**

There was ample evidence in the record that the $3,000 was given to appellant for the McClure tax account. Where the factual change wrought by reading grand jury notes is insubstantial, failure of the trial court to instruct as to the evidentiary value of such notes is not reversible error. United States v. Weinberg, 3 Cir., 1955, 226 F.2d 161, certiorari denied, 1956, 350 U.S. 933, 76 S.Ct. 305, 100 L.Ed. 815. Certainly there is no error where grand jury notes produce no change at all in the state of the record as that record affects the appellant.

The judgment of the district court will be affirmed.