Howard JAMISON, Administrator of the Estate of Julius Colosimo, Deceased,

v.

DI NARDO, INC., a Corporation, Appellant,

v.

EQUITABLE GAS COMPANY, a Corporation.

Nos. 13719 and 13720.

United States Court of Appeals Third Circuit.

Argued Feb. 5, 1962.

Decided March 14, 1962.

**28**

Kim Darragh, Pittsburgh, Pa. (Meyer, Darragh, Buckler & Bebenek, Pittsburgh, Pa., on the brief), for appellant.

James P. McArdle, Pittsburgh, Pa. (Donald J. Barley and McArdle, Harrington & McLaughlin, Pittsburgh, Pa., on the brief), for appellee.

William J. Lancaster, Pittsburgh, Pa., for Equitable Gas Co.

Before BIGGS, Chief Judge, and McLAUGHLIN and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The judgments appealed from are based on jury verdicts in favor of the plaintiff against the defendant under the Pennsylvania Wrongful Death and Survivor Acts respectively and a judgment in favor of the third-party defendant and against the defendant as third-party plaintiff.

On October 29, 1956, plaintiff's decedent, Julius Colosimo, was a crew foreman employed by Equitable Gas Company, the third-party defendant. On that date the defendant, DiNardo, Inc., was driving pile in West Carson Street, Pittsburgh, Pennsylvania. Equitable Gas maintained a twenty inch gas main under the surface of West Carson Street in the area under construction. DiNardo in the course of its work ruptured the main with resultant gas leakage. Equitable was notified and sent employees, including Colosimo, to the scene to ascertain just where the leak was and to repair it. A Bell Telephone inspector advised Colosimo that the digging of a hole near a manhole in the vicinity of the leak might interfere with utility connections. Colosimo went down into the manhole to inspect the situation and was overcome by the leaking gas. After he was brought up to the street surface all efforts to revive him were unsuccessful and he was pronounced dead.

Though appellant concedes that there was sufficient evidence for the jury to find it was negligent in causing the leak in Equitable's gas main, it contends that such negligence was not as a matter of law the legal cause of Colosimo's death and that the court should have allowed its motion for a direction of verdict. Appellant's theory is that more than two hours prior to Colosimo's accident Equitable had become familiar with the circumstances of the leak, was in charge and had decided not to shut off the gas. There was testimony that Equitable's method of handling the break was in accord with gas industry practice and that the leaking gas was being vented properly, preparatory to the break being found and the main dead capped. Evidence that there was a strong odor of gas in the manhole which Colosimo entered is stressed by appellant. However, there is evidence to the contrary by Prout, a member of Colosimo's crew, who himself went down to aid Colosimo without a gas mask. It is true, as is pointed out, that testimony was at least shaken on cross-examination but it was before the jury. The testimony of three Pittsburgh firemen who helped bring Colosimo's body up from the manhole, was that they had not noticed the smell of gas in the area. As is seen even in this brief resume of the record, appellant had the basis of a strong argument that its original fault was not the proximate cause of Colosimo's death but there was enough

---

---

evidence in the record to make that proposition a question for the jury to decide.

■■ Much the same problem is presented in the next point where it is urged that Colosimo was contributorily negligent as a matter of law. It is rightly suggested that in a death case the presumption of due care on the part of the decedent is really not evidential but rather the placing of the burden of proof upon the defendant. (Johnstone, Admx. v. Reading Company, 248 F.2d 71, 74, (3 Cir. 1957)). The latter here did adduce testimony to show that Colosimo was careless in entering the manhole as he did. And the jury would have been justified in accepting it. But as we have indicated there was evidence to the contrary. In the circumstances the trial judge was bound to send the issue to the jury.

■ Appellant's points regarding the weight of the credible evidence, on this record, were matters for the trial court and are not validly for our consideration. Nor were the amounts of the verdicts grossly excessive under the law and the evidence.

■ The claim is made that plaintiff's counsel during his summation, in giving the jury estimations of deceased's future earnings based on life expectancy, stated amounts not justified by the evidence. This is not at all clear from the record. No objection was had to the statement when made or at any time prior to the case being submitted to the jury. There is no basic and highly prejudicial error before us as would warrant our taking note of the matter in the absence of objection. United States v. Max, 156 F. 2d 13, 16 (3 Cir. 1946); Boettger, Adm. v. Babcock and Wilcox Company, 253 F. 2d 854 (3 Cir. 1958); Foster v. Donora Southern Railroad Company, 241 F.2d 714 (3 Cir. 1957).

■ The court charged the jury on the doctrine of sudden emergency. Appellant contends that the principle had no application to the circumstances as they existed when Colosimo entered the manhole. The charge stated:

"There has also been some discussion, or at least, an inference, that either Colosimo or one of the other defendants was involved in a sudden emergency. The law in that respect is that where a person is confronted with a sudden emergency, so that that person who is confronted with a sudden emergency does not have the opportunity for the time to act with the judgment that. a careful and prudent person would ordinarily exercise, said person is held only to the exercise of his best judgment which time permits under the circumstances, and is not responsible for a mistake in judgment or for guessing wrong. * * * It is, therefore, for the jury to determine, under all the facts and circumstances in this case, whether or not a sudden emergency existed, * * *.

* * * * * *

" * * * was, or, was not the dead person confronted with a sudden emergency through no fault of his own?"

There is no thought that the court erred in outlining the law. And there was testimony from J. R. Headley, Superintendent for Equitable of its A O Division, which included the critical territory, that "It was an emergency repair, yes. * * * The line had to be in service so it had to be repaired. We considered it an emergency."

We find no error under this caption.

■ The last point argued asserts that the trial was an unsatisfactory one and that the interests of justice require a new trial. In support of this it is noted that the court was reluctant to hold side bar conferences with the attorneys, preferring instead to excuse the jury. The court's reason for this was because " * * * on occasion, due to the physical arrangement of the courtroom * * * jurors overhear remarks of counsel and the Court resulting in prejudice to one party or the other." We do not consider that the court's attitude in this respect materially prejudiced any of the parties.

■ The facts that the construction contracts involved were discussed in the presence of the jury and that originally the court thought DiNardo had the sole responsibility of protecting the old pipeline are mentioned as adversely affecting defendant. The record shows that the court took adequate care of this in a lengthy explanation to the jurors which concluded with the following language:

"So, as a matter of law, as far as this contract is concerned, the only thing that DiNardo had to do was to dig this ditch for the new 20 inch line, and any other ruling that I have heretofore made to the contrary is vacated and set aside, and that is all this contract means."

Colloquies regarding the admission of a map and the action of the court in directing a witness to produce a job diary were de minimis by themselves or in connection with the other referred to items.

■ Appellant then cites the following excerpt from the charge, apparently as detracting from its unquestioned right to a fair trial:

"The Court: This is the only time, members of the jury, that *these parties* will ever have a right to come into court. What you do today is final and conclusive for all time to come." (Emphasis supplied).

This was directed equally to all three parties to the suit. There was not the slightest differentiation made. It was a permissible statement.

Dissatisfaction is expressed with that part of the charge reading:

"And at this point, I should say to you that the plaintiff's cause of action is solely against DiNardo Corporation. It has no right to recover against the Equitable Gas Company, but in that respect I am going to get into a rule of law now that will have particular application, or, may have particular application to the Equitable Gas Company. I think that it is proper to state to you at this time that DiNardo has also brought a suit against Equitable Gas Company, and it will all be clear to you as I get to the end of my charge. You might think it confusing, but, believe me, it will not be confusing."

■ The theory is that DiNardo was prejudiced by the jury being told that plaintiff's action was against DiNardo alone and that he had no right to recover against Equitable. However, it must be remembered that DiNardo was the only defendant in plaintiff's suit; Equitable was brought into the litigation by DiNardo's third-party action against it. The jury was not only entitled to that information but needed it in order to understand the relationship of the litigants and to arrive at proper conclusions.

Following argument appellant, with the court's permission, submitted several other illustrations of the alleged unsatisfactory conduct of the trial by the district judge. We have now examined these. At most they are not serious of themselves or in combination with those above outlined.

This was a difficult trial which the court rightly turned over to the jury for its determination. That body might well have found in favor of the defendant but on the trial proofs was justified in its decisions.

The judgments of the district court will be affirmed.