**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ismael PEREA, Defendant-Appellant.**

**No. 131–68.**

United States Court of Appeals
Tenth Circuit.

July 11, 1969.

Joseph D. Beaty, Albuquerque, N. M. (William C. Marchiondo, Albuquerque, N. M., on the brief), for appellant.

Leon Taylor, Asst. U. S. Atty., Albuquerque, N. M. (John Quinn, U. S. Atty., and John A. Babington, Asst. U. S. Atty., on the brief), for appellee.

Before MURRAH, PICKETT and HOLLOWAY, Circuit Judges.

PICKETT, Circuit Judge.

Appellant Perea was charged in a two-count indictment with receiving and concealing a quantity of heroin in violation of 21 U.S.C. § 174, and with selling the same without a written order on a form issued by the Secretary of the Treasury in violation of 26 U.S.C. § 4705(a). He was convicted by a jury and received concurrent five-year sentences on each count.

The evidence material to Perea's conviction showed that on April 22, 1967 federal and local narcotics agents met at a prearranged location in Albuquerque, New Mexico with a former addict turned informer. After searching the informer and his vehicle, five $20-bills, the serial numbers of which had been previously recorded, were given to the informer by the agents for the purpose of effecting a purchase of narcotics from Perea. The informer, followed closely by the agents, then proceeded a short distance to Perea's residence. He drove directly to the front of the residence, while the agents drove to a hill at the rear thereof. From this vantage point the agents observed a transaction between the informer and Perea at the rear of a carport which was situated at the side of the house. The informer, again closely followed by the agents, returned to the previous meeting place where the agents repeated their search and took custody of a tinfoil package. The five $20-bills were not found. Upon analysis, the substance contained therein was found to be heroin. Perea was not arrested until two months later because the informer was being used to aid in other narcotics investigations.

■ Initially, Perea attacks the jurisdiction of the trial court, arguing that under 21 U.S.C. § 174 illegal importation of the heroin was a jurisdictional fact, proof of which was a prerequisite to the vesting of jurisdiction in the trial court. Without a preliminary showing of subject matter jurisdiction over the offense charged, it is contended, the trial court was powerless to proceed with the trial.

18 U.S.C. § 3231 lodges original jurisdiction of all offenses against the United States in the district courts. Authority for the bifurcated method of proceeding contended for does not exist. The indictment charged offenses against the United States in language similar to that of the statutes. Subject matter jurisdiction was vested in the district court upon the filing of the indictment.[1] Young v. United States, 10 Cir., 354 F. 2d 449, cert. denied, 384 U.S. 912, 86 S. Ct. 1355, 16 L.Ed.2d 364; cf. Mosher v. City of Phoenix, 287 U.S. 29, 53 S.Ct. 67, 77 L.Ed. 148; Thompson v. Terminal Shares, Inc., 8 Cir., 89 F.2d 652, cert. denied *sub nom.* Guaranty Trust Co. v. Thompson, 302 U.S. 735, 58 S.Ct. 121, 82 L.Ed. 568; 22 C.J.S. Criminal Law § 143.

■ Appellant next attacks the constitutionality of the "presumption" relating to the unexplained possession of narcotics created by 21 U.S.C. § 174.[2] The argument is that subsequent to the enactment of § 174, Congress legalized under certain regulated conditions the domestic production of opium (21 U.S.C. §§ 188–188n), thereby rendering the inference of knowledge of illegal importation from possession alone obsolete. But Congress expressly provided that § 174, among others, was not being repealed. 21 U.S.C. § 188h; United States v. Williams, 7 Cir., 175 F.2d 715.

Congress established a comprehensive scheme by which opium for medical and scientific purposes could be grown by persons licensed by the Secretary of the Treasury. 21 U.S.C. § 188e(c). And § 188c prohibits sale or purchase without a license. Perea does not claim to have possessed the necessary license.

The trial court record is devoid of evidence that domestically produced opium or its derivative, heroin, in fact constitutes a portion of the illegal domestic market in that drug. As a result, no factual basis exists for this court to upset the presumption of illegal importation, and in turn, no basis for upsetting the presumption of knowledge of illegal importation. See Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L. Ed.2d 57. As indicated in *Leary* at F.N. 92, absent a basis for a "detailed inquiry into the available facts about the state of mind of" "hard" narcotics users or sellers, this court continues to be bound by *Yee Hem*, and therefore, the presumption remains valid.

■■ Perea admitted upon cross-examination that he had been convicted of drunken driving in 1948. Defense counsel objected when the prosecution continued to delve into the matter of a prior conviction. The trial court excused the

---

1. "The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defence, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had." United States v. Cruikshank, 92 U.S. 542, at 558, 23 L.Ed. 588.

2. The constitutionality of § 174 has been frequently upheld by this and other courts. Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904; Garcia v. United States, 10 Cir., 373 F. 2d 806; Maestas v. United States, 10 Cir., 341 F.2d 493; Cordova v. United States, 10 Cir., 303 F.2d 454; Morgan v. United States, 9 Cir., 391 F.2d 237, cert. denied, 393 U.S. 853, 89 S.Ct. 91, 21 L.Ed.2d 122. The same argument presented here concerning the effect of §§ 188–188n had been raised in the trial court in *Morgan*.

jury[3], and upon subsequent inquiry it became apparent that the prosecution was attempting to impeach Perea's credibility by demonstrating a specific act of misconduct; namely, that Perea had perjured himself at his earlier trial. The trial court sustained objection to this line of questioning on the ground that Perea's denial of involvement in the accident and his failure to convince the jury of his noninvolvement would only raise an inference of perjury, and in doing so exceed the scope of proper impeachment. No further inquiry into Perea's past criminal record occurred after cross-examination had resumed in the presence of the jury. By electing to testify, Perea submitted himself to impeachment as any other witness, Martin v. United States, 10 Cir., 404 F.2d 640; Burrows v. United States, 10 Cir., 371 F.2d 434, and cases cited therein; Coulston v. United States, 10 Cir., 51 F.2d 178; see Butler v. United States, 10 Cir., 408 F.2d 1103; and the limitation imposed by the trial court upon the prosecution's inquiry was timely, within the trial court's discretion, and effectively prevented prejudice to the accused. See Gordon v. United States, Cir., 127 U.S.App.D.C. 343, 383 F.2d 936, cert. denied, 390 U.S. 1029, 88 S.Ct.

1421, 20 L.Ed.2d 287; Hood v. United States, 125 U.S.App.D.C. 16, 365 F.2d 949; Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763.

■ During the prosecution's case-in-chief, counsel for Perea, upon cross-examination, elicited information concerning a contact between the informer and Perea in May, 1967. Subsequently, Perea acknowledged having been acquainted with the informer, but denied having seen him between January and August, 1967.[4] On rebuttal, over objection that this was a collateral matter, the government was permitted to show that the two men had been observed conversing in Perea's bar on May 10, 1967. To avoid prejudice to the accused, the trial court was solicitous in limiting unsubstantiated evidence of related crimes, and the court instructed the jury that it could consider the evidence of a contact between the informer and Perea subsequent to the date of the offense charged as only bearing upon the nature of their relationship. Counsel for the accused opened up the matter and the accused made an issue out of it by his denial. It thus became a proper subject for rebuttal by the government. See Humes v. United States, 10 Cir., 186 F.2d 875;

---

3. In the presence of the jury cross-examination of the defendant relative to this point had proceeded as follows:

"Q. Mr. Perea, did you have, in May of 1948, in California, did you have an accident where a man was injured by accident?

"MR. MARCHIONDO: Now, we're going to object to this, if the Court please, as being an improper question, on the grounds we have previously stated to the Court, and the question is improperly framed.

"THE COURT: I agree on the latter.

"MR. LOVE: I was going to lead up to the specific question. These were preliminary questions.

"THE COURT: Well, I'll—I agree that the form of the question is improper.

"Q. Mr. Perea, in May—in 1948, in California, were you convicted of hit and run, a felony?

"MR. MARCHIONDO: Now, we object to this question, if the Court please, on the grounds previously stated.

"THE COURT: Fine, the objection is overruled, it's admissible for such weight as the jury wants to give it, on the question of credibility.

"A. Yes, sir, I was convicted of drunken driving.

"Q. And you were tried, is that correct?

"A. Yes, sir.

"Q. Were you guilty of it?

"MR. MARCHIONDO: Now, if the Court please, I'm going to object to this—just a minute—"

4. Perea's testimony was that his only contacts with the informer had been at his bar where the informer had been involved in altercations on two separate occasions and in the United States Court House where the informer allegedly solicited a bribe while Perea was awaiting the calling of his case.

United States v. Garelli, 7 Cir., 333 F.2d 649, cert. denied, 380 U.S. 917, 85 S.Ct. 904, 13 L.Ed.2d 801; White v. United States, 9 Cir., 317 F.2d 231; United States v. Johnson, 2 Cir., 208 F.2d 404, cert. denied, 347 U.S. 928, 74 S.Ct. 531, 98 L.Ed. 1080; United States v. Pincourt, 3 Cir., 159 F.2d 917.

 Error is alleged from the failure of the trial court to give an offered instruction which made specific reference to prejudice against individuals of Spanish-American descent. It is urged that because of Perea's earlier challenge to the array of the jury based on the small number of Spanish surnamed individuals included therein, and because of the frequent involvement in New Mexico of persons with Spanish surnames with narcotics offenses, the offered instruction should have been given. We find nothing in the record which warranted calling attention to the appellant's ancestry. An instruction defining the province of the jury cautioned the jurors against allowing their prejudices to affect their verdict. The question of impartiality had been covered as well by the court on voir dire. The requested instruction would have unnecessarily belabored the point. Unless otherwise shown, it must be presumed that the jurors abided by the court's instruction. Baker v. Hudspeth, 10 Cir., 129 F.2d 779.

Lastly, the alleged error in the trial court's refusal to grant a motion for a new trial on the basis of newly discovered evidence merits little discussion. Subsequent to the trial it was learned that on the date of the offense certain construction work was being performed on the route taken by the informer and the narcotics agents to Perea's residence. No mention of this had been made at trial, but at the hearing on Perea's motion it became clear that although the road had been partially obstructed, it had not been impassable. We are satisfied that had the evidence presented at the hearing been available at the trial, it would not have produced a different result and the trial judge did not plainly abuse his discretion. See King v. United States, 10 Cir., 402 F.2d 289, and cases cited therein.

Affirmed.