James Lee BURROWS, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 8899.

United States Court of Appeals
Tenth Circuit.

Jan. 4, 1967.

Thomas M. Thompson, Albuquerque, N. M., for appellant.

Lewis O. Campbell, Albuquerque, N. M. (John Quinn, U. S. Atty., and John A. Babington, Asst. U. S. Atty., Albuquerque, N. M., on the brief), for appellee.

Before LEWIS and HICKEY, Circuit Judges, and STANLEY, District Judge.

HICKEY, Circuit Judge.

Appellant and another were found guilty, by a jury, of violating the Dyer Act (18 U.S.C. § 2312).

A motion for a new trial was filed. The trial court denied the motion and filed a memorandum which is part of the transcript. This appeal was then filed.

The motion for a new trial and the points on appeal raise two questions: (1) Was it improper for the prosecutor in cross-examining the accused to attempt to bring out a parole violation investigation? (2) Was it improper for the prosecutor, in his closing argument, to refer to the exercise by the accused of his right to refuse to give a written statement?

The uncontroverted evidence reflects the following series of events: Accused, testifying in his own behalf, related that he was going to California to join the Marine Corps. He had been in Des Moines, Iowa, for this purpose, however, he decided to go to California to join because he would be assigned to the West Coast if accepted there. In order to impeach the witness and test his credibility, the prosecutor sought to prove through the accused that he had been in Des Moines for a parole violation investigation. A violation of this kind would disqualify appellant for the service.

"When a defendant in a criminal action takes the stand, he takes with him his character and reputation. He is supported by more than his own testimony, for the law presumes that his reputation is good with respect to all elements involved in the crime with which he is charged. For this reason it has always been considered proper in cross-examination to interrogate him as to all collateral matters which would clearly tend to disprove the legal presumption with which he is clothed. Such interrogation is admitted merely to test his credibility as a witness and can only be considered by the jury for that purpose." United States v. Waldon, 114 F.2d 982, 984 (7 Cir. 1940). See also 161 A.L.R. 233.

"When a defendant in a criminal case testifies in his own behalf, he may be asked on cross examination whether he has been convicted on a prior charge. The testimony is admissible for the purpose of impeachment. [Citations omitted]." Thayer v. United States, 168 F.2d 247, 249 (10 Cir. 1945).

The rule quoted in the Thayer case, supra, has been reiterated by this court. Maguire v. United States, 358 F.2d 442, 445 (10 Cir. 1966).

■ The prosecutor had the right to test the credibility of the accused's testimony and was within the rule permitting impeachment.

■ In closing argument defense counsel commented on the innocence and lack of knowledge of legal rights of the accused. The prosecutor in reply related the fact that accused had sufficient knowledge of his rights to refuse to sign a statement.[1] Appellee refers to the record,[2] and identifies as part of the evidence a question and answer of an FBI agent concerning the signing of a statement. This makes the remark a mere comment on evidence. Under these circumstances, we see no prejudicial error in a statement of government counsel made in answer to accused counsel's argument.

"Finally, Swift urges that the United States Attorney committed prejudicial error in his argument to the jury. The argument referred to was to the effect that Swift's three cohorts had pleaded guilty and that 'you don't plead guilty unless you know that what you did was wrong.' This argument was made in a specific context. On cross-examination, Swift's counsel had elicited testimony from two of Swift's accomplices that they did not know that they were loading stolen pipe on the trucks. In his closing argument, Swift's counsel then urged upon the jury the proposition that since these individuals did not know that they were loading stolen pipe it was reasonable to believe that Swift did not know the pipe was stolen. If this argument by Swift's counsel had been accepted by the jury, it would have acquitted Swift. Under these circumstances, it was entirely proper for the United States Attorney to argue, as he did, that Banks and Ray did know that the pipe was stolen, as demonstrated by their pleas of guilty. In any event, there was no objection to the argument, and the error, if any, is not of such fundamental importance that it should be noticed on appeal. [Citations omitted]." Swift v. United States, 314 F.2d 860, 863 (10 Cir. 1963).

We concur with the trial court's memorandum denying the motion for new trial and affirm its conclusions.

Affirmed.

1. "So we have no signed statement and there, of course, is no duty upon them to give a signed statement. 'They said, No, I don't care to give a signed statement.' "

2. "Q. (by prosecution). Before we leave the interview with Mr. Ehlers (appellant's co-defendant) did you ask him if he would sign a statement? A. (by FBI agent) Yes, ma'am, I did. He said he did not want to sign anything at that time."