**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Carl Emmitt PRICHARD, Defendant-Appellant.**

**No. 84–2326.**

United States Court of Appeals, Tenth Circuit.

Jan. 9, 1986.

Charles Szekely, Asst. Fed. Public Defender, Denver, Colo., for defendant-appellant.

James K. Bredar, Asst. U.S. Atty. (Robert N. Miller, U.S. Atty., with him on brief), Denver, Colo., for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, and LOGAN, Circuit Judge.*

LOGAN, Circuit Judge.

Carl Emmitt Prichard appeals his conviction in district court of attempted bank robbery, a violation of 18 U.S.C. § 2113(a). On appeal he claims that: (1) his acts did not proceed past preparation and thus could not constitute an attempt, and (2) the district court should have held an evidentiary hearing to determine whether conversations between witnesses warranted a new trial.

In early April 1984, Prichard and Michael Windsor planned to rob a bank and also to rob the manager of a bowling alley. Unbeknownst to Prichard, Windsor was a paid FBI informant. Throughout Prichard's preparations for the two robberies, Windsor was cooperating with the FBI.

The evidence presented at trial showed that before Prichard became acquainted with Windsor, Prichard had watched the target bank for one to two weeks to learn the bank manager's system of opening the bank. Prichard also had learned the make of the manager's car and had prepared a rough sketch of the bank. After they agreed to perform the two robberies, Prichard had Windsor obtain a car, handcuffs, and gloves to use in the robberies. Prichard also instructed Windsor to determine the bank manager's address from his license plate.

Windsor permitted the FBI to place a listening device in the car he obtained to use in the robberies. Through this device, the FBI recorded a conversation between Prichard and Windsor on April 18, the night of Prichard's arrest. On that night there was some confusion over which rob-

---

* The Honorable William E. Doyle, Senior United States Circuit Judge, heard oral argument in this case but did not participate in the final decision.

bery would be performed first. Much of the conversation suggested that Prichard intended to rob the bowling alley manager that night and the bank the next morning. In both cases he intended to hold the families of the managers hostage to coerce them into consenting to his demands. On that night Prichard had picked up a slapstick or "zapper," a weapon similar to a blackjack. He did not, however, have the gun, police scanner, or handcuffs that had been obtained already for use in the robberies.

Prichard and Windsor, after stopping at a bar to pick up the slapstick, drove to the banker's house. Apparently Prichard intended to "jimmy" the window and then wait to see if the police would respond. If there was no response, it is unclear whether he and Windsor would have entered the banker's house that evening or the following morning. The evidence most strongly suggested that they did not plan to enter the banker's house that evening, and that the primary purpose of the trip was to watch the banker's house. As the two approached the banker's house, the FBI arrested Prichard.

I

Prichard's first claim is that his acts constituted mere preparation. As courts invariably and correctly state, the question of when preparation ends and attempt begins is exceedingly difficult. *See, e.g.,* *United States v. Brown,* 604 F.2d 347, 350 (5th Cir.1979), *cert. denied,* 445 U.S. 962, 100 S.Ct. 1649, 64 L.Ed.2d 237 (1980). In *United States v. Monholland,* 607 F.2d 1311 (10th Cir.1979), we stated that under federal criminal law,

"mere intention to commit a specified crime does not amount to an attempt. It is essential that the defendant, with the intent of committing the particular crime, do some overt act adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission of the crime."

*Id.* at 1318. Later, in *United States v. Bunney,* 705 F.2d 378, 381 (10th Cir.1983),

we required a "substantial step" toward the commission of the crime, which we defined as an act that is "strongly corroborative of the firmness of the defendant's criminal intent." *Id.* (quoting *United States v. Mandujano,* 499 F.2d 370, 376 (5th Cir.1974), *cert. denied,* 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975)).

In the instant case, therefore, we must determine whether Prichard's objective acts, without relying on the intent underlying those acts, strongly corroborate his intent to rob the bank. *See United States v. Pennell,* 737 F.2d 521, 525 (6th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985); *United States v. Oviedo,* 525 F.2d 881, 885 (5th Cir.1976). Because Prichard was convicted, in responding to this inquiry, we must view the evidence in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

The key question in this case is whether the reconnoitering of the object of a crime and the collecting of the instruments to be used in that crime, together, can constitute a substantial step. The Model Penal Code of the American Law Institute provides that:

"Without negativing the sufficiency of other conduct, the following, if strongly corroborative of actor's criminal purpose, shall not be held insufficient as a matter of law:

(c) reconnoitering the place contemplated for the commission of the crime;

. . . .

(f) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances;"

Model Penal Code § 5.01(2)(c), (f) (1962 Proposed Official Draft). The Commentary to the Model Penal Code explains that "firmness of purpose is shown when the actor proceeds to scout the scene of the contemplated crime in order to detect possible

dangers and to fix on the most promising avenue of approach." Model Penal Code and Commentaries 337 (Official Draft and Revised Comments 1985). Other circuits have moved toward this approach and have upheld attempt convictions based on surveillance of the object of a crime *and* the assemblage of the necessary instruments. *See United States v. McFadden*, 739 F.2d 149, 152 (4th Cir.) (discussion of plans, reconnoitering of bank, assemblage of weapons and disguises, and presence at bank supports attempt conviction), *cert. denied,* — U.S. —, 105 S.Ct. 302, 83 L.Ed.2d 236 (1984); *United States v. Snell*, 627 F.2d 186, 188 (9th Cir.1980) (assemblage and possession of materials for use in robbery, reconnoitering of bank and bank manager's routine, and presence at bank manager's home supports attempt conviction).

In the instant case, despite the ambiguity in the record over which robbery Prichard intended to perform on the night of his arrest, there was sufficient evidence for the district court to find that Prichard's actions strongly corroborated his intent to rob the bank. Prichard spent two weeks observing the bank; he prepared a sketch of the bank; he had his supposed accomplice find out the bank manager's address and case the bank manager's home; he followed a different bank employee home who also was involved in opening the bank; he assembled the instruments necessary to commit the crime; and, finally, he went to the bank manager's house on the night of the arrest. We cannot say that these actions are insufficient for conviction by virtue of being so "commonplace that they are engaged in by persons not in violation of the law." *Oviedo*, 525 F.2d at 885. Instead we find that they were sufficient to support an inference, without relying on Prichard's underlying intent, that he intended to rob the bank.

Prichard's argument rests largely on his contention that he did not intend to enter the bank manager's home on the evening of his arrest. Even if he was not going to take the bank manager hostage that night, his acts were sufficiently corroborative of his intent to constitute a substantial step toward commission of the crime. The police need not wait until the defendant is on the verge of committing the specific act that constitutes the crime. If this were the rule, much of the preventative purpose of inchoate liability would be vitiated. Instead, in order to protect the public, modern "attempt" law allows criminal liability to attach at some point prior to the last proximate act. *See United States v. Jackson*, 560 F.2d 112, 118 (2d Cir.), *cert. denied*, 434 U.S. 941, 98 S.Ct. 434, 54 L.Ed.2d 301 (1977); *see also* Model Penal Code Commentary at 324–25 (under Model Penal Code approach need not show defendant would probably not have desisted prior to completing crime). Although it was unclear exactly when Prichard intended to enter the banker's home, there was sufficient evidence for the trier of fact to determine, as a matter of law, that Prichard intended to proceed with the bank robbery in the immediate future.[1]

## II

Prichard's second claim is that the district court should have held an evidentiary hearing to determine whether conversations between witnesses warranted a new trial. Prichard contends that David Wade, vice-president of the target bank, discussed his testimony with Windsor prior to testifying. The only specific statement Prichard recounts is a comment by Windsor to Wade that if Prichard had discovered that Wade had no family he would have killed him. From this, Prichard infers that more extensive conversations occurred among the witnesses.

The district court denied the motion for a new trial and refused to conduct a hearing

---

1. The transcript of the conversation between Prichard and Windsor suggests that, if the bowling alley robbery yielded a sufficient amount of money, it might be unnecessary to rob the bank. This contingent statement does not negate the firmness of Prichard's intent to rob the bank. At this point Prichard still appeared committed to robbing the bank. Otherwise there would have been little reason for him to watch the banker's home on the night of his arrest.

in which Wade and Windsor would testify as to their discussions. The court found that the sequestration order did not prohibit witnesses from discussing their testimony; it only required that witnesses be excluded from the courtroom while other witnesses were testifying.

In *United States v. Johnston*, 578 F.2d 1352 (10th Cir.), *cert. denied*, 439 U.S. 931, 99 S.Ct. 321, 58 L.Ed.2d 325 (1978), we held that a sequestration order pursuant to Fed. R.Evid. 615 requires not only that witnesses be excluded from the courtroom, but that witnesses also refrain from discussing their testimony outside the courtroom. *Id.* at 1355. Any other rule would allow witnesses to tailor their testimony to each other's and indirectly defeat the purposes of Rule 615. *Id.* Consequently *Johnston* held that the court should instruct counsel and witnesses that witnesses "are not only excluded from the courtroom but also that they are not to relate to other witnesses what their testimony has been and what occurred in the courtroom." *Id.* (footnote omitted). The district court, therefore, was incorrect in stating that Rule 615 only requires that witnesses be excluded from the courtroom.

■ Violation of a defendant's right that witnesses be sequestered does not require a new trial, however, unless the court's decision to allow the allegedly tainted testimony was an abuse of discretion or resulted in prejudice to the defendant. *See United States v. Ortega-Chavez*, 682 F.2d 1086, 1089–90 (5th Cir.1982); *see also Government of the Virgin Islands v. Edinborough*, 625 F.2d 472, 474 (3d Cir.1980) (no prejudice found); *Johnston*, 578 F.2d at 1355 (no abuse of discretion found). Courts have disagreed over who has the burden of showing prejudice. *Compare Edinborough*, 625 F.2d at 474 (burden on defendant) *with United States v. Ell*, 718 F.2d 291, 293–94 (9th Cir.1983) (presump-

tion of prejudice, rebuttable by preponderance of evidence that error was harmless). This circuit, however, has indicated consistently that the defendant must prove there was either prejudice or an abuse of discretion. *See United States v. Coffman*, 638 F.2d 192, 198 (10th Cir.1980), *cert. denied*, 451 U.S. 917, 101 S.Ct. 1995, 68 L.Ed.2d 309 (1981); *United States v. Maestas*, 523 F.2d 316, 321 (10th Cir.1975); *Oliver v. United States*, 121 F.2d 245, 250 (10th Cir.), *cert. denied*, 314 U.S. 666, 62 S.Ct. 124, 86 L.Ed. 533 (1941).

Witness Wade testified on the following matters: (1) his position and duties at the bank; (2) his minimal knowledge of Prichard's plan; (3) his routine in opening the bank; (4) the make and license plate of his car; and (5) the identification of the bank as an FDIC insured institution. Wade also was able to identify Prichard's sketch as being of his bank. He was not cross-examined on any of these matters. We cannot say that any of Wade's testimony could have resulted in prejudice to Prichard. The only factual information in Windsor's comment was that Prichard intended to hold his family hostage. Wade, however, did not testify as to Prichard's plans. Windsor's comment therefore could not have influenced Wade's testimony. At worst, Wade's testimony corroborated the testimony of Windsor and the FBI.

■ Additionally, Prichard did not challenge any of the details to which Wade testified.[2] He did not, for example, contend that the sketch was not a sketch of the target bank or that Wade did not open the bank. The other matters that Wade testified to were simple objective facts, *i.e.*, his license plate number, the make of his car, and the bank's insurance. This type of information ordinarily is not subject to tailoring, and, if it were, it could have been exposed easily.

2. While Prichard claims that witnesses other than Wade might have heard Windsor's comment, the only other witness who gave substantive testimony was FBI agent Chuck Evans. Even if Windsor discussed his testimony with Agent Evans, Prichard would be unable to show

prejudice because the trial court may permit the government's principal investigative agent to remain in the courtroom even if he is to testify later. *See, e.g., United States v. Jones*, 687 F.2d 1265, 1267–68 (8th Cir.1982).

Accordingly, despite the violation of Prichard's right that the witnesses be sequestered, Prichard has shown neither prejudice nor that the trial court abused its discretion in not holding an evidentiary hearing.

AFFIRMED.