**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 8 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JOSEPH PETER TUCKER; formerly
known as Joseph Peter Couturier; also
known as Joseph Perry St. John,

      Defendant-Appellant.

No. 96-2032
(D.C. No. CR-95-00074-JP)
(District of New Mexico)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **MCWILLIAMS**, and **BALDOCK**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered

submitted without oral argument.

Peter Joseph Tucker appeals his conviction of one count of attempted bank

robbery, 18 U.S.C. § 2113(a), and one count of entering a bank with intent to commit a

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

bank robbery, 18 U.S.C. § 2113(a). The district court sentenced him to concurrent eighty-four-month terms followed by concurrent three-year terms of supervised release on each count. Mr. Tucker raises seven errors on appeal. We affirm in part and reverse in part.

An anonymous caller told the Albuquerque FBI someone was planning to rob an Albuquerque bank and asked if there was any reward for this type of information. Demanding further facts before committing to a reward, agents met with Joel Brachtl, the tipster. Mr. Brachtl told agents a person known to him as "Perry St. John" had asked him about robbing an Albuquerque bank. He also informed them he had walked around the targeted bank with his friend who said he wanted "to scope out" the bank, its location and business hours. The agents regarded this information as credible evidence of the threat and Brachtl's ability to assist them in foiling the robbery. Later, agents were able to identify "Perry St. John" as Mr. Tucker.

At the agents' suggestion, Brachtl agreed to wear a device which recorded a subsequent conversation between Brachtl and Mr. Tucker. The tape, later played to the jury, captured Mr. Tucker telling Brachtl he would be like Santa Claus in February when tellers put money in the bag; he would use an address book in which to write the demand note so he could appear to be writing a check; and the note would say, "loose bills in the f_ _ _ _ _ g bag." Defendant then stated he would walk into the bank, display the address book, place it on the teller's counter and speak the words written on the note.

The day before the robbery, Brachtl and Tucker "cased" the bank. Mr. Tucker told Brachtl because he didn't have a getaway car, they should get a ride to a place near the bank and then walk the rest of the way together. Brachtl would stay outside while Tucker entered, and when Tucker left the bank, he would cross the street, drop the money bag where Brachtl could pick it up, and then take off in another direction.

On the day of the robbery, defendant donned a jacket, scarf, sunglasses, and hat to cover his Mohawk haircut and distinctive tattoos. He also planned to shed this outer layer immediately after the robbery to hinder his apprehension. Unknown to Mr. Tucker when he entered the bank, FBI agents had been substituted for bank personnel and stood at the teller windows. As Mr. Tucker entered, an FBI agent locked the door behind him. Immediately, agents ordered Mr. Tucker to the floor, handcuffed, and arrested him.

Upon these facts, defendant argues the evidence was insufficient to prove him guilty of attempted bank robbery because the government did not "introduce sufficient evidence for the jury to make a finding of intimidation." He postulates the evidence did not establish that he created a dangerous situation, nor did the government show "bank personnel were placed in fear of death or injury." Though defendant cites a number of cases revolving about the periphery of his theory, neither he nor the government cites the one which disposes of this issue.

The identical argument was made in *United States v. Prichard*, 781 F.2d 179 (10th Cir. 1986). There, the defendant asserted because he was thwarted before he even entered

a bank, his acts constituted mere preparation and did not establish the element of intimidation necessary to sustain the charges.  We disagreed with that contention stating to prove the crime of attempt the government must only establish the defendant took a "substantial step" toward the commission of the substantive crime.  *Id.* at 181.  A claim of insufficient evidence in the context of an attempted bank robbery requires a determination of whether the defendant's objective acts "strongly corroborate" his intent to rob a bank.  *Id.*  Under that test, we held reconnoitering the "object of the crime and . . . collect[ing] . . . instruments to be used in that crime," can constitute such a step.  *Id.*  We noted:

> The police need not wait until the defendant is on the verge of committing the specific act that constitutes the crime.  If this were the rule, much of the preventative purpose of inchoate liability could be vitiated.  Instead, in order to protect the public, modern "attempt" law allows criminal liability to attach at some point prior to the last proximate act.

*Id*. at 182.  Here, the defendant took all steps toward the commission of bank robbery.  He reconnoitered the premises, planned his getaway, then disguised himself, and prepared to use a note demanding money, then walked into the bank to carry out his purpose.  He did everything necessary to commit the robbery except make the final demand for the money; therefore, under our precedent he cannot escape culpability just because he was frustrated in the accomplishment of his final objective.

Furthermore, defendant's argument regarding intimidation overlooks the fact the charge here was one of <u>attempt</u>.  To prove an attempted bank robbery under 18 U.S.C. § 2113(a), the government must establish: (1) defendant intentionally attempted to take

money from the person or presence of another; (2) the money was then in the possession of a federally insured bank; and (3) defendant intended to take the money by means of intimidation. Thus, it is not necessary for the government to show the defendant actually intimidated anyone, but rather that he intended to have that affect. *See United States v. Moore*, 921 F. 2d 207, 209 (9th Cir. 1990); *United States v. Brown*, 412 F.2d 381, 382 (8th Cir. 1969) (The party accosted does not have to be put in fear of his life to constitute attempted bank robbery.). We believe a reasonable jury could have concluded because of the harshly obscene language defendant described in the note, he intended it to be intimidating.

Defendant next argues the district court erred in refusing to instruct on the lesser included offense of bank larceny and in failing to hold the indictment multiplicious. He asked the court to instruct the jury on attempted bank larceny because of the absence of the element of intimidation in the latter offense. The court refused, noting Tucker rested without providing any evidence. "Thus," the court stated, "the government's evidence of intimidation stands uncontroverted in the record. The absence of an evidentiary dispute is a sufficient reason why defendant was not entitled to an instruction on bank larceny." Mr. Tucker argues on appeal that his cross-examination of the government's witnesses to discredit their statements about intimidation was intended to controvert the government's case.

We have examined the portion of the record to which defendant's counsel has directed us and, although he has suggested no specific parts of that record we should review, we see nothing in the cross-examination that supports his contention the government's case was controverted by the cross-examination. The record upon which he relies is merely the testimony upon which his previous argument about the sufficiency of the evidence was based. That is, the witness simply stated the defendant did not present his demand note and was arrested before he could carry out his intent. As we have already noted, defendant's culpability arose from taking the substantial step toward commission of the crime of bank robbery and manifesting the intent to use intimidation as part of that transaction. Consequently, the cross-examination did not controvert the government's case because it did not reach these elements of the offense.

Although defendant raises as error the district court's refusal to dismiss count two of the indictment because of the multiplicity of the two counts, we have treated the issue as one of merger in similar cases. We have held under Supreme Court and Tenth Circuit precedent, counts of bank robbery and entry into a bank to commit a felony merge when the counts arise from the same event. *See **Brown v. United States***, 34 F.3d 990, 991 (10th Cir. 1994), and cases cited therein. Even though prior cases did not deal with attempted bank robbery, we can see no significant difference in the paradigm.

The government argues there is a distinction in the two offenses because a person can be convicted of attempted bank robbery without entering a bank, but we said in

***Brown*** merger occurs when the two charges "are based on a single criminal episode." ***Id.*** The result being grounded upon the whole episode, it makes no difference whether the principal transaction was an attempt or a completed robbery.

In either case, the appellate remedy is to remand with instructions to vacate the conviction on the merged count. ***Id.*** at 991. Here, the district court provided the sentences on both counts were to run concurrently; therefore, the refusal to grant the motion to dismiss the count of entering the bank was virtually harmless. Nonetheless, because the conviction on that offense is invalid, it cannot stand.

On direct examination, the government asked Agent Moeller, one of the FBI agents who dealt with Brachtl, whether Agent Moeller knew defendant would be armed when he walked into the bank. Agent Moeller answered:

> There was an unclear --we did not know for sure if he would be or not be. We did know that he had a weapon before, his rap sheet showed that he had used a weapon, we know that he was armed possibly at that time, according to the source of the information.

Defense counsel immediately moved to have the statement stricken and for a mistrial. The court subsequently gave two curative instructions for the jury to ignore the testimony. One was given immediately after the testimony which occurred at the end of the day and the next at the beginning of testimony the next day. Defendant did not object to either instruction.

Subsequently, in apparent response to questions asked in cross-examination suggesting the defendant was in an inebriated state when questioned in the FBI office,

Agent Moeller recounted a portion of the conversation he had with Mr. Tucker. The government contended Mr. Tucker was expressing "bravado," and he was sober. Agent Moeller testified Mr. Tucker said during the examination he had once weighed 160 pounds, that he now weighed 180 pounds, and he would "bulk up" in prison so that when "he hit the streets again," the implication was he would get even with the agents. Again objecting to the reference to the defendant's imprisonment, counsel moved for a mistrial which the court denied but later gave a curative instruction to ignore the testimony. Counsel did not object to this instruction either.

At the conclusion of the testimony, defendant renewed his motions for mistrial. The court ruled the instructions given during the trial and the jury charge would be sufficient to cure any harm resulting from the unsolicited answers of Agent Moehler. The court then offered the defense the opportunity to craft an additional instruction, but maintaining instructions were insufficient, and not being able to conceive of anything appropriate to tell the jury, counsel declined.

Defendant now asserts the two comments, which he claims were purposely elicited despite admonition and in the face of otherwise weak evidence, should be sufficient to establish the government engaged in outrageous conduct so extreme as to bar it from invoking judicial processes to obtain a conviction. Mr. Tucker relies on **United States v. Russell**, 411 U.S. 423 (1973), recognizing that although this doctrine usually arises in an investigative context, he claims it should be extended to this trial to mandate a mistrial.

We review the denial of a mistrial for abuse of discretion. *United States v. Joe*, 8 F.3d 1488, 1498 (10th Cir. 1993). We see none here. When testimony is ruled inadmissible, an instruction to ignore it is usually adequate to cure any alleged prejudice. *United States v. Peveto*, 881 F.2d 844, 859 (10th Cir. 1989). A new trial is warranted only when it cannot be said "with reasonable certainty that the reference to [the inadmissible evidence] 'had but very slight effect on the jury.'" *United States v. Sands,* 899 F.2d 912, 916 (10th Cir. 1990) (quoting *Sumrall v. United States*, 360 F.2d 311, 314 (10th Cir. 1966).

The comments objected to in this case were isolated and unresponsive. We cannot agree with defendant's characterization that they in any way amounted to extreme and outrageous conduct. While they may have been calculated on the part of the witness, our reading of the record indicates the remarks were not particularly prominent in the context in which they were delivered. We do not believe they had any effect on the jury, but any harm the statements did produce was more than cured by the court's immediate and responsive instructions. We can presume the jury followed the court's instruction and that any error was harmless at best.

Defendant next asserts his Sixth Amendment confrontational rights were violated because the court refused to allow him to cross-examine an FBI agent on the details of all of Brachtl's prior felony convictions. He predicates his argument on the contention he needed to impeach Brachtl's credibility because he was a paid informant who might have talked the defendant into committing an offense just to obtain reward money from the government. He

therefore urges he should have been permitted a more searching inquiry into Brachtl's convictions for rape, commercial burglary, and robbery. He further contends the details of the robbery conviction were particularly pertinent to his defense. He maintains because Brachtl's testimony was important to the government's case, the jury had the right to know of Brachtl's spotted past and the substantial amount of time he had spent in jail.

Once again, we have reviewed the record and find it unsupportive of defendant's claims. What we have found is the district court properly followed the limits of Fed. R. Evid. 609(a). The court ruled:

> Now, in performing a balancing test that I am required to do . . . I will permit you to ask questions under Rule 609(a)(1) about all of the felony convictions that came to the attention of [the FBI] even the one that is more than 10 years old, provided that you not ask about the nature of the convictions other than the one conviction for perjury.

At the behest of the government, the court later expanded the scope of inquiry to the forgery conviction as well. Accordingly, the defendant was properly allowed to establish the fact that Brachtl had prior felony convictions on specific dates which, by definition, was evidence that attacked his credibility. Moreover, defense counsel was allowed to inquire into the specific convictions for perjury and forgery because, as the court stated, those offenses were "most probative of [Brachtl's] veracity." The defense wanted more, however. It wanted to show the jury just how bad a character Brachtl really is. That, of course, is beyond the pale of the express purpose of Rule 609. Having achieved what that rule permits, defendant cannot now

predicate error on a ruling that refused to give him more than he was entitled to. *See United States v. McCarty*, 82 F.3d 943, 949-50 (10th Cir.), *cert. denied*, 117 S.Ct. 257 (1996).

Next defendant asserts the district court erred in not suppressing his confession. He contends after he was surprised by FBI agents when he entered the bank, and then "whisked" to FBI headquarters within minutes of his arrest and still under the effects of "heavy marijuana use," the agents took his statement, noting that he seemed jovial and compliant.

Defendant testified at the pretrial hearing on the motion to quash that his confession occurred after he had consumed a quarter ounce of marijuana during the day; therefore, he did not know what he was doing. Thus, he now argues, his confession was not the product of a free will or rational intellect.

Yet, the district court heard contrary testimony that he appeared sober, rational, and aware of his circumstances. At the conclusion of all the evidence, the court made a finding that defendant "voluntarily gave a statement after knowingly and intelligently signing an Advice of Rights form and Waiver of Rights." Subsumed in that finding, of course, is a finding defendant was in fact in possession of his faculties and was responding rationally. Defendant has failed to undertake a demonstration that those findings were clearly erroneous. Indeed, he simply states as fact he was intoxicated and, therefore, the court should have suppressed his statement.

The strongest evidence of Mr. Tucker's voluntary waiver is his signature on the waiver form, *United States v. Fountain*, 776 F.2d 878, 886 (10th Cir. 1985) (signature is

usually strong proof of voluntariness of waiver); and his familiarity with the criminal justice system, ***United States v. Cruz-Jimenez***, 894 F.2d 1, 8 (1st Cir. 1990) (evidence of valid waiver when defendant arrested five times before). Moreover, Mr. Tucker admitted to from ten to fifteen prior arrests and past criminal prosecutions, leading to the conclusion he was familiar with the criminal justice system and understood his rights. We find nothing here to indicate the court's findings were erroneous or its conclusion wrong. ***United States v. Baker,*** 30 F.3d 1278, 1280 (10th Cir. 1994).

Finally, Mr. Tucker raises but concedes the correctness of the district court's failure to award a two-level reduction for acceptance of responsibility. The issue is raised solely for the purpose of preserving it, he contends. Defendant does not contest he denied the essential factual elements of his guilt and thus is not eligible for the reduction. *See **United States v. Jaramillo***, 98 F.3d 521, 526 (10th Cir.), *cert. denied*, 117 S.Ct. 499 (1996).

The judgment of conviction for the offense of entering a bank with intent to commit a felony is **REVERSED** and remanded with instructions to **VACATE**. The remainder of the judgment of the district court is **AFFIRMED**.

ENTERED FOR THE COURT

John C. Porfilio
Circuit Judge

- 12 -