**UNITED STATES of America,
Plaintiff,**

v.

**Alex E. POWELL, Defendant.**

**No. CRIM 01–20021–01–KHV.**

United States District Court,
D. Kansas.

Sept. 7, 2001.

Robin D. Fowler, Office of United States Attorney, Kansas City, KS, for U.S.

Joseph D. Johnson, Joseph D. Johnson, Chartered, Topeka, KS, Charles D. Dedmon, Michael L. Harris, Office of Federal Public Defender, Kansas City, KS, Alex E. Powell, Leavenworth, KS, Terrence J. Campbell, Barber, Emerson, Springer, Zinn & Murray, LC, Lawrence, KS, for Alex E. Powell.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

On June 7, 2001, a jury found defendant guilty of being a felon in possession of a firearm and ammunition. This matter is before the Court on defendant's Motion For New Trial (Doc. # 33) and Motion For Judgment Of Acquittal (Doc. # 35), both filed June 29, 2001. After carefully considering the parties' briefs, the Court overrules defendant's motions.

### Standards For Motions For New Trial

▪ Rule 33, Fed.R.Crim.P., provides that a motion for a new trial may be granted "if required in the interest of justice." A motion for new trial under Rule 33 is not regarded with favor and is granted only with great caution. See *United States v. Custodio*, 141 F.3d 965, 966 (10th Cir.1998). The decision whether to grant a motion for new trial is committed to the sound discretion of the trial court. See *id.*

### Standards For Motions For Judgment Of Acquittal

▪ In considering a motion for judgment of acquittal pursuant to Rule 29, Fed.R.Crim.P., the Court cannot weigh the evidence or consider the credibility of witnesses. See *Burks v. United States*, 437 U.S. 1, 16, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). Rather, the Court must "view the evidence in the light most favorable to the government and then determine whether there is sufficient evidence from which a jury might properly find the accused guilty beyond a reasonable doubt." *United States v. White*, 673 F.2d 299, 301 (10th Cir.1982). The jury may base its verdict on both direct and circumstantial evidence, together with all reasonable inferences that could be drawn therefrom, in the light most favorable to the government. See *United States v. Hooks*, 780 F.2d 1526, 1531 (10th Cir.), cert. denied, 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986). Acquittal is proper only if the evidence implicating defendant is nonexistent or is "so meager that no reasonable jury could find guilt beyond a reasonable doubt." *White*, 673 F.2d at 301.

### Factual Background

The evidence at trial may be summarized as follows:

In March 1996, defendant was convicted of aggravated robbery and aggravated burglary in the District Court of Wyandotte County, Kansas. The Honorable J. Dexter Burdette sentenced defendant to a term of imprisonment of 64 months with credit for time served. Following his release from prison, defendant resided at a halfway house.

On October 20, 2000, defendant was released from the halfway house. That evening, he went to see his girlfriend, Sheila McElroy. At approximately 11:00 p.m., the two went to a friend's apartment at 2405 Elmwood Avenue in Kansas City, Kansas. The apartment was located on the upper level of a two story apartment building with a wrap around balcony on the second story. At approximately 12:20 a.m. on October 21, 2000, in response to a report of an armed disturbance at that address, Officers Chris Johnson and Steve Haulmark of the Kansas City, Kansas Police Department arrived at the apartment building. Sergeant Kenneth Shafer arrived shortly thereafter. Officer Johnson testified that as he approached the apartment building from the parking lot,

he saw defendant banging on an apartment door on the second floor. As Officer Johnson got closer, he observed a handgun in defendant's right hand. Officer Johnson signaled to Officer Haulmark that defendant had a gun. When defendant turned and saw the police officers, Officer Johnson identified himself and told defendant to drop his gun. According to Officer Johnson, defendant acted nervous; he reached down and placed the gun underneath a chair which was next to the door, immediately below a porch light. Officer Haulmark testified that after Officer Johnson told defendant to put down the gun, he saw that defendant had something in his hand and that defendant made a movement towards the ground. Officer Haulmark could not see what, if anything, defendant placed on the ground. After defendant placed the gun beneath the chair, Officers Johnson and Haulmark and Sergeant Shafer ran up the stairs and arrested defendant as he attempted to enter the apartment. Officer Johnson recovered the firearm which was loaded with five rounds of ammunition. Each officer testified that defendant resisted arrest.

Defendant testified that while he was on the balcony to the apartment building, he noticed police officers in the parking lot. He testified that he went to the apartment door and asked for McElroy, but that officers grabbed him as he entered the apartment. Defendant testified that the officers beat him without provocation and that he did not have a gun.

### Analysis

### I. Defendant's Motion For A New Trial

#### A. Admission Of Defendant's Prior Conviction

■ Defendant argues that the Court erred by admitting evidence of his prior conviction, i.e. that the prior conviction was for aggravated robbery and aggravated burglary. Rule 609, Fed.R.Evid., permits introduction of prior convictions for the purpose of attacking the credibility of a witness. When a defendant testifies, evidence of a prior conviction for a crime punishable by death or imprisonment for over one year "shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." Fed. R.Evid. 609(a)(1). At trial, defendant objected to cross-examination about his prior conviction. The Court overruled his objection. The Court noted that because defendant had put his character, honesty and integrity in issue, the probative value of the evidence outweighed its prejudicial effect. Defendant renews his objection. The Court's evidentiary rulings are reviewed for an abuse of discretion. See *United States v. Davis,* 40 F.3d 1069, 1073 (10th Cir.1994), cert. denied, 514 U.S. 1088, 115 S.Ct. 1806, 131 L.Ed.2d 732 (1995).

On direct examination, defendant testified that he felt bad about "it" (his conduct underlying the prior conviction), he regretted doing "it," and that he "just happened to end up going to the penitentiary for it." See Partial Transcript Of Jury Trial (Doc. # 32) filed June 13, 2001 at 2–3. Defendant also testified about positive aspects of his prior conviction: his rehabilitation, his work history and his church attendance in prison. Defendant's testimony opened the door for government counsel to ask about "it," i.e. the fact that defendant had been convicted for aggravated robbery and aggravated burglary. See *Brown v. United States,* 356 U.S. 148, 155–56, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958) (defendant cannot claim immunity from cross-examination on matters he put in dispute); *United States v. Wolf,* 561 F.2d 1376, 1381 (10th Cir. 1977) (where defendant attempts to explain away effect of prior conviction or to minimize his guilt, defendant may be

cross-examined on any facts which are relevant to direct examination); *Martin v. United States*, 404 F.2d 640, 643 (10th Cir.1968) (where defendant admits prior felony conviction, prosecution permitted to ask what felony was and when was it committed); cf. *United States v. White*, 222 F.3d 363, 370 (7th Cir.2000) (where defendant attempts to explain away prior conviction on direct examination, he has opened the door to impeachment by prosecution on details of conviction). Moreover, defendant, just like any other witness, put his character at issue by simply testifying. To preclude all cross-examination regarding his conviction "would make the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell." *Brown*, 356 U.S. at 156, 78 S.Ct. 622; see *United States v. Haslip*, 160 F.3d 649, 654 (10th Cir.1998) (Tenth Circuit has long permitted government to impeach testimony of defendant in same manner as any other witness, including reference to prior convictions); *Burrows v. United States*, 371 F.2d 434, 435 (10th Cir.1967) ("When a defendant in a criminal action takes the stand, he takes with him his character and reputation. He is supported by more than his own testimony, for the law presumes that his reputation is good with respect to all elements involved in the crime with which he is charged. For this reason it has always been considered proper in cross-examination to interrogate him as to all collateral matters which would clearly tend to disprove the legal presumption with which he is clothed.") (internal citation omitted). "Although [defendant] stipulated to his prior conviction of a felony, an element that the government would otherwise have to prove, ... [t]he jury has a right under the law to hear that any witness, whether it is the defendant or not, has a felony record that is or can be considered to be impeaching." *United States v. Toney*, 27 F.3d 1245, 1253 (7th Cir.1994).

■ Several circuit courts have outlined five factors to guide district courts when balancing the probative value and prejudicial effect of a defendant's prior conviction under Rule 609(a)(1). See, e.g., *United States v. Jimenez*, 214 F.3d 1095, 1098 (9th Cir.2000); *United States v. Smith*, 131 F.3d 685, 687 (7th Cir.1997); *United States v. Sloman*, 909 F.2d 176, 181 (6th Cir. 1990); *Gordon v. United States*, 383 F.2d 936, 940 (D.C.Cir.1967). These factors include:

1. the impeachment value of the prior crime;

2. the point in time of the conviction and the witness' subsequent history;

3. the similarity between the past crime and the charged crime;

4. the importance of the defendant's testimony; and

5. the centrality of the credibility issue.

*Jimenez*, 214 F.3d at 1098.

Here, the first two factors favor admission of defendant's prior conviction. The impeachment value of defendant's prior conviction was substantial based on the serious nature of aggravated robbery and aggravated burglary. See *United States v. Alexander*, 48 F.3d 1477, 1488 (9th Cir.) (robbery and drug convictions probative of defendant's credibility), cert. denied, 516 U.S. 878, 116 S.Ct. 210, 133 L.Ed.2d 142 (1995); *United States v. Jefferson*, 925 F.2d 1242, 1256 (10th Cir.1991) (district court did not abuse discretion by admitting defendant's prior conviction of aggravated robbery, which is a "substantial crime"); *United States v. Halbert*, 668 F.2d 489, 495 (10th Cir.) (armed robbery probative of credibility), cert. denied, 456 U.S. 934, 102 S.Ct. 1989, 72 L.Ed.2d 453 (1982). Defendant's prior conviction also was relatively recent (approximately five years earlier)

and he was arrested on the instant offense within 24 hours of his release from a halfway house on that conviction. See *United States v. Moore*, 917 F.2d 215, 234 (6th Cir.1990) (admission of armed robbery conviction from 9 years ago was proper in subsequent armed robbery prosecution); see also *Jefferson*, 925 F.2d at 1256 (district court did not abuse discretion by admitting defendant's conviction of aggravated robbery even though conviction was slightly beyond 10 year time limit of Rule 609(b)).

The next two factors favor exclusion of defendant's prior conviction. Defendant's prior crimes (aggravated burglary and aggravated robbery) are somewhat akin to the instant offense (felon in possession), and they tend to suggest that because defendant had previously committed an "aggravated" offense, he must have possessed a firearm on October 21, 2000. See *Toney*, 27 F.3d at 1254 (danger of admitting prior conviction for similar offense is that jury will regard prior conviction as evidence of willingness to commit crime charged). The importance of defendant's testimony also favors exclusion of his prior conviction. See *Gordon*, 383 F.2d at 940 ("One important consideration is what the effect will be if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions."). Defendant's testimony was essential to his claim that police officers planted the firearm and then beat him without provocation.

■ The final factor, i.e. the centrality of the credibility issue, favors admission of defendant's prior conviction. See *United States v. Smith*, 10 F.3d 724, 727 (10th Cir.1993) (district court did not abuse discretion by admitting defendant's earlier robbery and burglary convictions because of nature of defense and importance of his credibility). Of the five factors, three favor admission of defendant's prior convic-

tion while two favor exclusion of the evidence. The scales are tipped in favor of admission, however, by the importance of the credibility issue. See *United States v. Payton*, 159 F.3d 49, 58 (2d Cir.1998) (centrality of credibility issue and impeachment value of prior convictions are "highly relevant factors to a trial court's ultimate determination"); *Moore*, 917 F.2d at 234 (admission of armed robbery conviction was proper because defendant's credibility was "very much in contention"); *United States v. Brown*, 956 F.2d 782, 787 (8th Cir.1992) (prior conviction was "highly probative" because credibility of witnesses was critical factor in jury's determination). This case was a classic credibility contest between the police officers and defendant. Defendant admitted that he was on the balcony where the police officers observed him, but he claims that he did not have a firearm in his possession. Accordingly, the Court permitted the government to challenge defendant's credibility based on his prior conviction.

For these reasons, the Court finds that under Rule 609(a)(1), Fed.R.Evid., the probative value of defendant's prior conviction outweighed its prejudicial effect. Defendant's motion for a new trial on this issue is overruled.

**B. Questions Regarding Defendant's Prior Gun Use**

Defendant also objects to cross-examination regarding his use of a gun during his prior felony conviction. The government argues that the questions were proper because on direct examination, defendant referred to his prior offense and prior possession and use of firearms. "Cross examination 'may embrace any matter germane to the direct examination, qualifying or destroying, or tending to elucidate, modify, explain, contradict, or rebut testimony given in chief by the wit-

ness.' Admission of rebuttal evidence, particularly when the defendant 'opens the door' to the subject matter, is within the sound discretion of the district court." *United States v. Burch,* 153 F.3d 1140, 1144 (10th Cir.1998) (quoting *United States v. Troutman,* 814 F.2d 1428, 1450 (10th Cir.1987)). "[A] defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination." *McGautha v. California,* 402 U.S. 183, 215, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971); see Fitzpatrick v. United States, 178 U.S. 304, 315, 20 S.Ct. 944, 44 L.Ed. 1078 (1900) (defendant has no right to set forth all the facts which tend in his favor without laying himself open to cross-examination upon those facts).

Defendant opened the door to questions about his use of a gun during the commission of the prior felony. On direct examination, defendant testified:

Q: Can you tell me what happened a while ago that caused you to be a prohibited person?

A: Well, I kind of prefer not to, you know, get into that. I kind of feel bad about it. It's something I done, you know, when I was a lot younger and, you know, I regret doing it. I really wouldn't want to, you know, get into it.

Q: What happened as a result of the incident we're talking about?

A: Well, I just happened to end up going to the penitentiary for it, and I served my time. And the end result was a halfway house and back in October of—

\* \* \* \* \* \*

Q: You've handled guns before, haven't you?

A: Yes, sir.

Q: When?

A: I enlisted into the United States Army in 1982. I received an honorable discharge in 1988.

Q: Prior to the time you were convicted, had you owned guns or used—I shouldn't say used, but have you held a gun?

A: Yes, sir, I've held a gun. I used to have a sidearm in the military, and the standard procedure was to carry a weapon or whatever. Yes, sir, I have.

Q: Have you ever held a gun like the one you've seen here?

A: Yes, sir, I've held a revolver. And I'm sure if I would have had a revolver in my hand that night, that's at least five points of contact. That's four fingerprints and a palm print and possibly my thumbprint.

Q: Where did you learn about points of contact?

A: In the military. They taught us everything there was to know about weapons and guns and different stuff.

Q: Have you ever held a gun as old as the one you've seen today?

A: I've never really seen a gun as old as the one I've seen today, so—and, you know, I'm sure if I had a gun in my hand that night, at least one of my fingerprints would have been on that gun somewhere out of five points of contact, you know, to that weapon. Lord knows I didn't have no weapon that night.

■ Partial Transcript of Jury Trial (Doc. # 32) at 2–3. Defendant clearly attempted to leave the jury with the impression that his prior experience with guns was lawful and was primarily in the honorable military service of his country. In an effort to elucidate, modify, explain, contradict, or rebut this testimony, the government properly inquired on cross-examination whether defendant had a gun during the commission of his prior felony offense.

See *Burch*, 153 F.3d at 1144. Defendant answered "I never had a gun.... If you could read the specifics, sir, about the case, it would tell you." Partial Transcript of Jury Trial (Doc. # 32) at 20–21. The next day, in continued cross examination, government counsel gave defendant a certified copy of the journal entry of his conviction and asked again whether his prior conviction involved the use of a firearm. See Government's Exhibit 12. Defendant admitted that on the journal entry next to both of the offenses was an "FA" notation which meant "person felony was committed using a firearm." He claimed that the record was inaccurate, however, because the tests on the firearm were inconclusive. Government counsel did not probe further into the underlying facts of the prior conviction. Based on the scope of defendant's direct examination, the government properly inquired whether defendant had a firearm during the commission of his prior felony offense.

Defendant argues that government counsel spent almost as much time asking about his prior conviction as about the charge for which he was on trial. See Memorandum In Support of Motion For New Trial (Doc. # 34) filed June 29, 2001 at 6–7. The Court disagrees. The limited transcript in this case includes only defendant's testimony on June 5, 2001, which includes the beginning of cross examination. On that one day, approximately one of the 13 pages of cross-examination testimony concerns defendant's prior conviction. See Partial Transcript Of Jury Trial (Doc. # 32) at 20–32. On June 6, 2001, government counsel introduced a certified copy of the journal entry of defendant's prior conviction and briefly asked defendant about the firearm notations on the document. After defendant explained that the notations were incorrect, government

counsel questioned defendant about the events of October 20 and 21, 2000. Government counsel further inquired about the earlier conviction on re-cross, but only after defendant testified at some length on re-direct about why the journal entry of conviction was wrong.[1] Given the broad scope of defendant's re-direct examination, the government re-cross was proper.

In sum, the Court finds that it properly allowed government counsel to cross-examine defendant about his use of a gun during his prior felony conviction and on re-cross examination to inquire about the facts of that conviction.

### C. Failure To Issue Limiting Instruction Regarding Prior Conviction

■■■ Defendant claims that he is entitled to a new trial because the Court did not give a limiting instruction which admonished the jury that it could not infer guilt based on any similarity between the crime of indictment and the crime of prior conviction. In reviewing challenges to jury instructions, the Court must look at the jury instructions as a whole and determine if the jury likely was misled. See *United States v. Smith*, 13 F.3d 1421, 1424 (10th Cir.1994) (citing *United States v. Mullins*, 4 F.3d 898, 900 (10th Cir.1993)). A new trial is not appropriate where the instructions as a whole properly state the law and provide the jury an "intelligent, meaningful understanding of the applicable issues and standards." *United States v. Winchell*, 129 F.3d 1093, 1096 (10th Cir. 1997) (quoting *United States v. Laughlin*, 26 F.3d 1523, 1528 (10th Cir.1994)). The Court will grant a new trial only if it has "substantial doubt that the jury was fairly

---

**1.** Defendant testified that authorities found a gun at the drug house and tried to link it to him, but that tests and testimony on the issue were inconclusive.

guided." *Smith*, 13 F.3d at 1424 (quoting *Mullins*, 4 F.3d at 900).

 At trial, the Court instructed: When it has been shown that a witness has previously been convicted of a felony, you are to determine his credibility and the weight to be given his testimony the same as you would the testimony of any other witness. However, the fact that a witness has been convicted of crime may be considered by you in determining what credit you should give him as a witness and what weight you will allow his testimony.

Instructions To The Jury (Doc. # 25) filed June 7, 2001, No. 7. Defendant objected to this instruction on the grounds that it applies only if the prior crime involves dishonesty.[2] In his motion for new trial, defendant argues that the instruction is erroneous because it does not admonish the jury that it would be impermissible to infer guilt based on any similarity between the crime of indictment and the crime of prior conviction. Defendant did not raise this objection at trial, and the Court reviews the instruction for plain error. See *United States v. Vaziri*, 164 F.3d 556, 566 (10th Cir.1999); see also Fed.R.Crim.P. 30 ("No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection."); Fed.R.Crim.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). "Plain error, in this context, is error that affects the defendant's right to a fair and impartial trial." *United States v. Smith*, 13 F.3d 1421, 1424 (10th Cir.1994). To constitute plain error, the error must have been both

obvious and substantial. See *id.* A conviction will not be overturned for plain error unless one is left in grave doubt that the error had "substantial influence" in the jury's conclusion. *United States v. Williams*, 445 F.2d 421, 424 (10th Cir. 1971); see *United States v. Bowser*, 941 F.2d 1019, 1021 (10th Cir.1991) ("Plain errors are those errors that when viewed against the entire record seriously affect the fairness, integrity or public reputation of judicial proceedings.") (quotation and citation omitted).

 In retrospect, the Court recognizes that *sua sponte*, it should have given a limiting instruction regarding the permissible use of the fact of defendant's prior conviction. See *Williams*, 445 F.2d at 423 (when testimony of prior convictions is admitted, court should be careful to instruct jury that evidence is for impeachment purposes only). The Court remains convinced, however, that the error did not affect defendant's right to a fair and impartial trial. See *United States v. De La Cruz*, 902 F.2d 121, 124 (1st Cir.1990) (failure to give *sua sponte* limiting instruction regarding prior conviction not reversible error). First, viewing the instructions as a whole, the jury was not likely misled. The following instructions, taken together with Instruction No. 7, adequately cautioned the jury on the effect of defendant's prior conviction:

In determining whether defendant is guilty or innocent, *you are to consider only whether he has committed the acts charged in the indictment.* Defendant is not on trial for any act or conduct not specifically charged in the indictment. Even if you are of the opinion that defendant is guilty of some offense not charged in the indictment, you must find

---

**2.** Defendant's objection was without merit because Rule 609(a)(1) permits a party to attack a witness' credibility based on a prior conviction for a crime punishable by death or imprisonment in excess of one year.

defendant not guilty if the evidence does not show beyond a reasonable doubt that he has committed the specific acts charged in the indictment.

\* \* \* \* \* \*

A reasonable doubt is a fair doubt based upon reason and common sense and arising from the state of the evidence. It is rarely possible to prove anything to an absolute certainty, but at the same time *defendant is not to be convicted on mere suspicion or conjecture.* You are instructed that a reasonable doubt is a doubt that would make a reasonable person hesitate to act in the graver and more important transactions of life.

\* \* \* \* \* \*

*The law presumes a defendant to be innocent of crime.* This presumption remains with him throughout the trial. Thus, defendant, although accused, begins the trial with a "clean slate," with no evidence against him. And the law permits nothing but legal evidence presented before the jury to be considered in support of any charge against the accused. So the presumption of innocence alone is sufficient to acquit defendant, unless the jurors are satisfied of defendant's guilt beyond a reasonable doubt by all the evidence in the case.

Jury Instruction Nos. 9, 13–14 (emphasis added). Indeed, in closing argument, defense counsel specifically referred to Instruction No. 9 and reminded the jury that defendant was not on trial for what he did in 1996.[3] The instructions as a whole adequately apprised the jury that it should not consider the fact of his prior conviction as substantive evidence of his guilt. More-

over, as a matter of trial strategy, defendant may have preferred to avoid calling further attention to the prior conviction in a limiting instruction. See *De La Cruz*, 902 F.2d at 124. Accordingly, the Court finds no plain error in its failure to issue a limiting instruction.

In closing arguments, government counsel suggested a pattern of conduct by defendant, i.e. defendant claimed that drug dealers lied about possessing a gun in 1996 and police officers also lied about him possessing a gun on October 21, 2000. Although assertions of a pattern of conduct ordinarily are impermissible to infer guilt, government counsel limited these assertions to judging whether defendant's defense and his testimony were credible. Indeed, in closing rebuttal argument, government counsel immediately followed this argument with a request that the jury consider defendant's assertions regarding his possession of a gun in 1996 when evaluating *defendant's bias and credibility as a witness.* In other words, the government asked the jury to infer that because defendant asserted facts which were contrary to the certified journal entry of his 1996 conviction, they should not believe his testimony that on October 21, 2000, he did not have a gun. Such an inference is permissible.[4]

Finally, the Court's failure to give a limiting instruction does not warrant a new trial because such an instruction would not have changed the jury's inquiry. Defendant's case depended almost entirely on his credibility, as against the credibility of three police officers. The Court instructed the jury that the testimony of law enforce-

---

**3.** Defense counsel also warned the jury that it should not find defendant guilty simply because he had committed a prior crime. In closing arguments, both defense and government counsel told the jury that the only pertinent question was whether defendant possessed a firearm on October 21, 2000.

**4.** The government could not and did not argue that because defendant was convicted of a firearms offense in 1996, the jury should find that he possessed a firearm on October 21, 2000.

ment officers is not entitled to any special or exclusive weight. See Jury Inst. No. 6. Because the jury found defendant guilty, it necessarily found that his version of events was not credible. If the Court had instructed the jury to consider defendant's prior conviction only as to credibility, and not as evidence of guilt, the jury certainly would have reached the same result.

For these reasons, the Court finds that its failure to give a limiting instruction on defendant's prior conviction does not require a new trial.

### D. Evidence Of Dispatch Report

In his motion for a new trial, defendant argues that the Court erred by admitting testimony about the police dispatch report on October 21, 2000 because such testimony was hearsay and more prejudicial than probative under Rule 403. At trial, defendant did not properly raise either objection. Before trial, defendant asked the Court to exclude as hearsay evidence of a police dispatch report that an armed black male suspect who drove an older model white Lincoln was at 2405 Elmwood. The government argued that the evidence would not be offered for the truth of the matter asserted, but only to show why officers responded to the location and eventually drew their weapons. Defendant argued that the evidence was prejudicial because another individual, Melvin Glover, lived at the same residence and also drove a white Lincoln. Defendant maintained that if the government presented a description of the suspect from the dispatch report, he should be able to present evidence from the dispatch report that Melvin Glover, a convicted felon, lived at the address and was considered armed and dangerous. Defense counsel then asked the Court to defer ruling on the issue. The Court agreed but ruled that government counsel could mention in opening statement why police officers were at the location. Accordingly, government counsel

outlined this information in opening statement. Officer Johnson then testified on direct examination that he and Officer Haulmark were dispatched to 2405 Elmwood for an armed disturbance. Officer Johnson testified that the suspect was a black male, armed with a handgun, driving a white Lincoln. Defendant did not object to this inquiry. On cross-examination, defense counsel asked Officer Johnson if he knew that Melvin Glover lived at 2405 Elmwood and that Mr. Glover had an aggravated robbery conviction. Government counsel objected on hearsay grounds because the information was based on the dispatch report. Defense counsel responded that the evidence was offered only to show what Officer Johnson knew when he arrived at the scene, not to prove the truth of the matter asserted. The Court therefore overruled the government's objection. Because defense counsel did not object during the course of trial to evidence from the dispatch report, defendant did not preserve his objection.

■■■ Even if defendant had properly objected to Officer Johnson's testimony that police were looking for a suspect who was a black male, armed with a handgun, and driving a white Lincoln, the Court nevertheless would have admitted the evidence. First, the evidence was not hearsay because the government did not offer it for the truth of the matter asserted. Defendant himself offered evidence from the dispatch report under the same rationale. Next, to the extent defendant would have objected under Rule 403, Fed. R.Evid., the Court would have found that the probative value of the testimony outweighed its prejudicial effect. Before trial, defendant objected to that part of the dispatch report which stated that the suspect was driving a white Lincoln. Defense counsel stated that defendant did not have an objection based on the dispatch report

that the suspect was a black male and armed. Any arguable prejudice which arose from the fact that the suspect was driving a white Lincoln was minimal.

██ Even if the Court erred by admitting evidence of the dispatcher's statements, the alleged error would not warrant a new trial. A new trial is necessary only if one has grave doubt that the inadmissible evidence "substantially swayed" the jury. *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); see *United States v. Tome,* 61 F.3d 1446, 1455 (10th Cir.1995); see also *United States v. Tucker,* 110 F.3d 74, 1997 WL 163523, at *4 (10th Cir.1997) (new trial necessary when it cannot be said "with reasonable certainty that the reference to [the inadmissible evidence] had but very slight effect on the jury") (quotation and citation omitted). Based on the record, the dispatcher's statements had a negligible effect on the jury. As explained above, the case was a credibility battle between the police officers and defendant. Defendant does not deny that he was the individual on the porch just outside the apartment door at 2405 Elmwood Avenue. The only disputed question was whether defendant had in his possession a gun and ammunition. The fact that the dispatcher initially identified the suspect as a black male driving a white Lincoln is immaterial to that determination. To convict defendant based on that identification would have been contrary to the Court's instruction that "defendant is not to be convicted on mere suspicion or conjecture" or for

crimes committed by others. Jury Inst. Nos. 7, 13. Moreover, as explained by defense counsel before trial, any potential prejudice was significantly reduced because the Court admitted the portion of the dispatch report which stated that Melvin Glover lived at 2405 Elmwood and was considered armed and dangerous. For these reasons, any error in ·admitting the dispatch report does not warrant a new trial.

## II. Defendant's Motion For Judgment Of Acquittal

### A. Sufficiency Of Evidence

██ Defendant argues that the government did not present sufficient evidence for a jury to find that he possessed a firearm and ammunition. In support, defendant states that his fingerprints were not found on the gun or the ammunition, that all the witnesses agreed that it was dark at the time of the incident, that Officers Haulmark and Johnson both testified that they drew their weapons but that they failed subsequently to include this information in their detailed reports, that Sergeant Shafer was either mistaken or untruthful about his whereabouts at critical times, and that each officer had a motive to fabricate evidence because they used force against defendant and caused him injury. Each argument reflects defendant's interpretation of the evidence, which the jury was entitled to reject.[5] Based on the verdict, the jury did reject each of defendant's theories. Based on the evi-

---

**5.** Based on the evidence at trial, the jury could reasonably conclude that (1) the absence of fingerprints was not dispositive or even helpful because fingerprints are rarely obtained from firearms and bullets, (2) although it was dark, Officer Johnson could see that defendant had a firearm in his right hand because defendant was standing close to a porch light, (3) the fact that the reports did not comment that Officers Johnson and Haul-

mark drew their weapons was a mere oversight and/or not significant, (4) Sergeant Shafer was credible and he did not report that he was on the scene at 2405 Elmwood until after defendant had been arrested and placed in the police car, and (5) the officers did not use excessive force against defendant and did not have any motive to fabricate evidence.

dence, a reasonable jury could conclude that defendant possessed the firearm and ammunition.

For these reasons and those stated by the Court at trial, defendant's motion for judgment of acquittal based on the sufficiency of the evidence is overruled.

B. Constitutionality Of 18 U.S.C. § 922(g)(1)

Defendant contends that the Court does not have jurisdiction over this case because 18 U.S.C. § 922(g)(1) exceeds the authority granted to Congress under the Commerce Clause. Defendant recognizes that the Tenth Circuit has rejected this argument. See *United States v. Dwyer*, 245 F.3d 1168, 1169 (10th Cir.2001). Accordingly, defendant's motion for judgment of acquittal based on the constitutionality of 18 U.S.C. § 922(g)(1) is overruled.

**IT IS THEREFORE ORDERED** that defendant's Motion For New Trial (Doc. # 33) filed June 29, 2001 be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that defendant's Motion For Judgment Of Acquittal (Doc. # 35) filed June 29, 2001 be and hereby is **OVERRULED.**